No. 25-1867

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LARRY RICHARDSON,

      Plaintiff - Appellee,

v.

NATHAN FALK,

      Defendant - Appellant.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Susan K. DeClercq

**BRIEF FOR DEFENDANT-APPELLANT**

Lars H. Kivari (P84582)
Assistant Attorney General
Counsel of Record
Attorney for Defendant-Appellant
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055

Dated:  January 14, 2026

## CORPORATE DISCLOSURE

State government and state agencies are excepted from filing a corporate affiliate/financial interest disclosure statement.

# TABLE OF CONTENTS

Page

Corporate Disclosure ...................................................................... i

Table of Contents ........................................................................ ii

Table of Authorities ..................................................................... iv

Statement in Support of Oral Argument ............................................... viii

Jurisdictional Statement ................................................................. 1

Statement of Issue Presented ............................................................ 2

Introduction .............................................................................. 3

Statement of the Case ................................................................... 4

    A.    Richardson starts to experience chest pain. ........................... 5

    B.    Richardson reports his chest pain to CO Falk. ....................... 5

    C.    CO Falk tells Richardson to return to his cell. ....................... 6

    D.    Richardson goes to healthcare. ......................................... 7

    E.    Richardson files his lawsuit. ............................................ 7

    F.    CO Falk moves for summary judgment. ................................ 9

    G.    The magistrate judge issues a report and
          recommendation. ..................................................... 10

    H.    CO Falk objects to the R&R. ......................................... 12

    I.    The district court adopts the R&R over CO Falk's
        objections. ........................................................... 16

Standard of Review ..................................................................... 22

Summary of Argument ................................................................... 23

Argument ..................................................................................... 24

I.  CO Falk was entitled to qualified immunity because he did
    not violate an Eighth Amendment right that was clearly
    established at the time of the conduct at issue and the
    district court thus erred by denying summary judgment. ........... 24

    A.  Richardson did not establish that CO Falk was
        deliberately indifferent to a serious medical need. .............. 25

        1.  The district court erred as a matter of law when
            it determined Richardson established the
            objective component of his Eighth Amendment
            deliberate indifference claim. ...................................... 27

        2.  The district court erred as a matter of law when
            it determined Richardson established the
            subjective component of his Eighth Amendment
            deliberate indifference claim. ...................................... 35

    B.  The district court erred as a matter of law when it
        determined CO Falk violated a clearly established
        right. ....................................................................................... 40

Conclusion and Relief Requested ............................................................ 48

Certificate of Compliance ....................................................................... 49

Certificate of Service .............................................................................. 50

Designation of Relevant District Court Documents ............................... 51

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................26

*Ashford v. Raby,*
951 F.3d 798 (6th Cir. 2020) .......................................... 44, 45

*Barton v. Martin,*
949 F.3d 938 (6th Cir. 2020) ...............................................23

*Bell v. City of Southfield,*
37 F.4th 362 (6th Cir. 2022) ........................................... 39, 44

*Binay v. Bettendorf,*
601 F.3d 640 (6th Cir. 2010) ...............................................24

*Blackmore v. Kalamazoo Cty.,*
390 F.3d 890 (6th Cir. 2004) ..................................... passim

*Bletz v. Gribble,*
641 F.3d 743 (6th Cir. 2011) ...............................................22

*Brown v. Chapman,*
814 F.3d 436 (6th Cir. 2016) ...............................................22

*Burnett v. Griffith,*
33 F.4th 907 (6th Cir. 2022) ................................................44

*Comstock v. McCrary,*
273 F.3d 693 (6th Cir. 2001) ...............................................26

*District of Columbia v. Wesby,*
583 U.S. 48 (2018) ........................................................ 27, 40

*Estate of Carter v. City of Detroit,*
408 F.3d 305 (6th Cir. 2005) ..................................... passim

iv

*Feagin v. Mansfield Police Dep't.*,
   155 F.4th 595 (6th Cir. 2025)..............................................................44

*Goode v. Berlanga*,
   646 F. App'x 427 (6th Cir. 2016) ......................................10, 15, 19, 42

*Gregg v. Georgia*,
   428 U.S. 153 (1976) ..............................................................................26

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ..............................................................................24

*Harrison v. Ash*,
   539 F.3d 510 (6th Cir. 2008) ...............................................................28

*Hartman v. Moore*,
   547 U.S. 250 (2006) ..............................................................................26

*Hawkins v. Anheuser-Busch, Inc.*,
   517 F.3d 321 (6th Cir. 2008) ...............................................................22

*Howlett v. City of Warren*,
   854 F. App'x 722 (6th Cir. 2021) ...........................................................1

*Jones v. Pramstaller*,
   678 F. Supp. 2d 609 (W.D. Mich. 2009) ...............................................12

*Key v. Grayson*,
   179 F.3d 996 (6th Cir. 1999) ..........................................................15, 25

*Lewis v Casey*,
   518 U.S. 343 (1996) ..............................................................................47

*Marvaso v. Sanchez*,
   971 F.3d 599 (6th Cir. 2020) .................................................................1

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ..................................................................................41

*New Albany Main Street Props v. Watco Cos, LLC*,
   No. 24-5375, 2025 WL 88943, at *3 (6th Cir. January 14, 2025)........26

*Pearson v. Callahan,*
555 U.S. 223 (2009) ...............................................................24

*Perez v. Oakland Cty.,*
466 F.3d 416 (6th Cir. 2006) ..............................................25

*Phillips v. Roane Cty.,*
534 F.3d 531 (6th Cir. 2008) ..............................................26

*Quigley v. Tuong Vinh Thai,*
707 F.3d 675 (6th Cir. 2013) ..............................................22

*Raimey v. City of Niles,*
77 F.4th 441 (6th Cir. 2023)...............................................39

*Rhodes v Chapman,*
452 U.S. 337 (1981) ..............................................................47

*Rhodes v. Chapman,*
452 U.S. 337 (1981) ..............................................................25

*Saucier v. Katz,*
533 U.S. 194 (2001) ..............................................................41

*Scott v. Harris,*
550 U.S. 372 (2007) ..............................................................38

*Shimmel v. Michigan Dep't of Corr.,*
Case No. 1:21-cv-358, 2023 U.S. Dist. LEXIS 46577, *13–14
(W.D. Mich March 20, 2023) .......................................15, 19

*Terrance v. Northville Reg'l Psychiatric Hosp.,*
286 F.3d 834 (6th Cir. 2002) ..............................................12

*Tlamka v. Serrell,*
244 F.3d 628 (8th Cir. 2001) ...........................19, 20, 21, 44

*Turner v. Scott,*
119 F.3d 425(6th Cir. 1997) ...............................................24

*Wilkie v. Robbins,*
551 U.S. 537 (2007) ..............................................................26

*Williams v. Maurer,*
  9 F.4th 416 (6th Cir. 2021)....................................................23

**Statutes**

28 U.S.C. § 1331 ..........................................................................1

42 U.S.C. § 1983 ...................................................................1, 26

**Rules**

Fed. R. Civ. P. 56(a).................................................................22

Fed. R. App. P. 4(a)(1)(A) .........................................................1

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Plaintiff-Appellee Larry Richardson (Richardson) is an inmate incarcerated with the Michigan Department of Corrections (MDOC). Defendant-Appellant Nathan Falk (CO Falk) is an employee of the MDOC. CO Falk believes that the issues in this case can be adequately addressed in the briefs, and that oral argument is not necessary. However, should the Court disagree, Defendant-Appellant will gladly present oral argument.

# JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Richardson raised, among other claims, a federal question under the Eighth Amendment to the United State Constitution and 42 U.S.C. § 1983.

On September 3, 2025, the district court entered an order denying Falk summary judgment on the basis of qualified immunity. (Order, R. 63, Page ID # 551–564.) This Court has appellate jurisdiction to hear interlocutory appeals from district court orders, provided that the appeal raises an issue of law such as the denial of qualified immunity. *Howlett v. City of Warren*, 854 F. App'x 722, 723 (6th Cir. 2021) (citing *Marvaso v. Sanchez*, 971 F.3d 599, 604 (6th Cir. 2020)). Thus, this Court has appellate jurisdiction to hear Falk's interlocutory appeal from that order.

Falk timely filed his Notice of Appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A) on September 26, 2025. (Notice, R. 68, Page ID # 567–568.)

# STATEMENT OF ISSUE PRESENTED

1.  Government officials performing discretionary functions are shielded from civil liability if their conduct does not violate a right that was clearly established at the time of the alleged conduct. Richardson cannot show a constitutional violation, and the law was not clearly established in January 2023 such that a reasonable officer would have known that delaying medical care for eight minutes amounted to deliberate indifference. Did the district court err by denying CO Falk qualified immunity?

# INTRODUCTION

At the heart of this appeal lies a single question: whether a short delay in medical care of only eight minutes for a non-obvious medical condition violates a prisoner's Eighth Amendment rights, and, if so, was it clearly established in January 2023.

Specific to this appeal, Richardson contends CO. Falk was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He contends CO Falk denied him medical care by ordering him to go to his cell after he complained of chest pain and requested healthcare, despite Richardson being transported to healthcare a mere eight minutes after he initially informed CO Falk of his condition.

Denying CO Falk summary judgment on the basis of qualified immunity, the district court held that a reasonable jury could conclude CO Falk knew of and disregarded Richardson's serious medical needs, in violation of the Eighth Amendment. It further held that the status of the law was clearly established at the time such that a reasonable officer like CO Falk would understand it was unlawful to delay

Richardson's medical care for less than ten minutes, and, therefore, CO Falk was not entitled to qualified immunity.

The district court erred as a matter of law by refusing to grant CO Falk qualified immunity. First, a reasonable jury could not have concluded that Richardson established his Eight Amendment deliberate indifference claim against CO Falk. Second, it was not clearly established that an eight-minute delay in medical treatment violated the Eighth Amendment. Accordingly, this Court should reverse the district court and grant summary judgment to CO Falk for Richardson's Eighth Amendment claim.

## STATEMENT OF THE CASE

Plaintiff-Appellee Larry Richardson #361621 (Richardson) is an inmate in the custody of the Michigan Department of Corrections (MDOC). At all times relevant to this lawsuit, Richardson was housed at the St. Louis Correctional Facility (SLF) in St. Louis, Michigan. (Am. Compl., R. 13, Page ID # 45–49.) Defendant-Appellant Nathan Falk (CO Falk) was a Corrections Officer with the MDOC and worked at SLF at all times relevant to this lawsuit. (*Id.*, at Page ID # 48.)

**A. Richardson starts to experience chest pain.**

At approximately 7:00 p.m. on January 27, 2023, Richardson attended a religious service at SLF. (Def. MSJ, R. 54–4, Page ID # 434, ln. 19–22.) Shortly thereafter, at "around 7:45, 8:00[,]" Richardson's "heart really start[ed] picking up and speeding." (*Id.*) Richardson returned to his unit by 8:43 p.m. and took a couple "nitro" pills to alleviate the discomfort. (*Id.* at Page ID # 434, ln. 25; *Id.* at Page ID # 435, ln. 1–2, 22–25; *Id.* at Page ID # 438, ln. 11–15.) The pills, however, did not afford Richardson any relief. (*Id.* at Page ID # 435, ln. 4.)

**B. Richardson reports his chest pain to CO Falk.**

Due to the continued discomfort, at approximately 8:44 p.m., Richardson went to CO Falk who was stationed in the unit near an area called the "bubble" and informed him of his chest pains. (*Id.* at Page ID # 439, ln. 22–25; *Id.* at Page ID # 440, ln. 1–3.) Specifically, Richardson told CO Falk "that I was having bad chest pains and I needed to go to healthcare. I needed them to call healthcare for me." (*Id.* at Page ID # 440, ln. 2–3.) However, according to CO Falk, Richardson did not appear to be in distress at the time of their interaction. (*Id.* at R. 54–3, Page ID # 420, ¶ 9.) Also, multiple other prisoners were walking

around the unit at the time.  (*Id*. at Page ID # 421, ¶ 11.)  Given both

circumstances, CO Falk ordered Richardson to return to his cell while

he called healthcare.  (*Id*.; *Id*. at Page ID # 420, ¶ 10.)

**C.    CO Falk tells Richardson to return to his cell.**

Richardson, on the other hand, claims that in response to his

request for healthcare, CO Falk was dismissive — he told Richardson,

"No, I am not calling them.  Go back to your cell."  (*Id*. at Page ID # 440,

ln. 4–9.)  A brief argument ensued between the two.  (*Id*. at Page ID #

440, ln. 4–18.)  Richardson refused to return to his cell and told CO

Falk he had "sudden death syndrome" and that he "could die at any

given minute."  (*Id*. at Page ID # 440, ln. 9–11.)  In response, CO Falk

allegedly stated, "Don't drop dead on my base.  Go back to your cell."

(*Id*. at Page # 440, ln. 11–12.)  Richardson continued to refuse to return

to his cell prompting CO Falk to allegedly say, "Go back to your cell, I

am giving you a direct order, or you're going to the hole."  (*Id*. at Page

ID # 440, ln. 13–17.)

Richardson still did not return to his cell; instead, he "went and

sat in a wheelchair in the back of the bubble.  I was waiting on [CO

Falk] to come take me to the hole.  One way or another I was going to go

to healthcare." (*Id*. at Page ID # 440, ln. 16–21.) At the time Richardson sat down in the wheelchair it was approximately 8:48 p.m. — roughly four minutes had elapsed since Richardson first approached CO Falk. (*Id*. at Page ID # 441, ln. 14–21.)

### D. Richardson goes to healthcare.

Richardson remained seated in the wheelchair until 8:52 p.m. when someone arrived at the unit and pushed him to healthcare. (*Id*. at Page ID # 441, ln. 14–22.) He remained at SLF healthcare until approximately 9:45 p.m. when he had a heart attack and was taken to an off-site hospital. (*Id*. at Page ID # 443, ln. 10–25.)

### E. Richardson files his lawsuit.

On February 28, 2023, Richardson filed this § 1983 action against CO Fuller, Inspectors B. Hull and E. Salinas, Grievance Coordinator K. Parsons, Warden Christensen, the St. Louis Correctional Facility, and the MDOC seeking monetary damages and injunctive relief for alleged violations of his civil rights. (Compl., R. 1, Page ID # 1–4; Am. Pet., R. 3, Page ID # 14.) All defendants, except CO Fuller, were subsequently dismissed from this action at screening. (Order, R. 7, Page ID # 4–16.)

Thereafter, on June 8, 2023, Richardson filed a motion to amend his complaint to add CO Falk as the sole defendant in lieu of CO Fuller. (Pl. Mot. to Amend, R. 9, Page ID # 19–20.) However, his motion was denied because he failed to attach a proposed amended complaint to his motion. (Order, R. 11, Page ID # 38–41.) Richardson subsequently filed a second motion to amend with a proposed amended complaint on July 11, 2023, again seeking to add CO Falk and remove CO Fuller from this case. (Pl. 2nd Mot. to Amend, R. 13, Page ID # 44–49.) In a text-only order, the district court granted Richardson's motion resulting in Richardson's proposed amended complaint now being the operative complaint in this case. (Text-only Order, dated 7/12/2023.) In his amended complaint, Richardson alleges CO Falk was deliberately indifferent to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights. (Am. Compl., R. 13, Page ID # 46–49.) In addition to damages for the alleged constitutional violations, Richardson sought injunctive relief in the form of disciplining or terminating CO Falk or transferring Richardson from CO Falk's supervision at SLF. (Def. MSJ, R. 54–4, Page ID # 430, ln. 3–24.)

**F.     CO Falk moves for summary judgment.**

On January 28, 2025, CO Falk moved for summary judgment arguing:  (1) CO Falk was entitled to qualified immunity as to Richardson's Eighth Amendment claim because his actions did not amount to deliberate indifference and did not violate clearly established law; (2) Richardson's Fourteenth Amendment claim should be dismissed because it should be analyzed under the Eighth Amendment; and (3) Richardson's request for injunctive relief should be denied because the relief he sought was not warranted.  (*Id.* at R. 54, Page ID # 389–445.)

Specific to the Eighth Amendment claim, CO Falk argued Richardson could not establish that he sustained an objectively serious injury because he had not placed in the record "verifying medical evidence" to show the alleged delay in medical care in-fact caused his injury, as required by *Napier v. Madison Cty.*, 238 F.3d 739 (6th Cir. 2001).  (*Id.* at Page ID # 403–405.)  And, specific to his qualified immunity defense, CO Falk argued there was not clearly established precedent establishing that the brief delay in this case would violate Richardson's Eighth Amendment rights.  (*Id.* at Page ID # 406.)  As support, he cited *Goode v. Berlanga*, 646 F. App'x 427, 430–31 (6th Cir.

2016), for the proposition that a brief delay of five to seven minutes to check on a "seriously ill" prisoner was not an Eighth Amendment violation.  (*Id*.)  Richardson responded.  (Pl. Supp. Br., R. 58, Page ID # 463–459.)

### G.   The magistrate judge issues a report and recommendation.

A report and recommendation (R&R) on CO Falk's motion for summary judgment issued on June 25, 2025.  (R&R, R. 63, Page ID # 519–532.)  The magistrate judge recommended dismissing Richardson's Fourteenth Amendment claim and his claim for injunctive relief on the grounds asserted by CO Falk.  (*Id*., at Page ID # 528–531.)

However, the magistrate judge recommended denying CO Falk summary judgment for Richardson's deliberate indifference claim.  (*Id*., at Page ID # 522–528.)  The magistrate judge explained that "the record support[ed] a finding that [Richardson] told [CO] Falk that he was experiencing classic heart attack symptoms and that [CO] Falk understood what [Richardson] was requesting to be evaluated by healthcare for these symptoms."  (*Id*. at Page ID # 525–526.)  According to the magistrate judge, because CO Falk allegedly ordered Richardson

to return to his cell in lieu of going to healthcare despite being aware of Richardson's request, "a reasonable factfinder could then infer that [CO] Falk disregarded the seriousness of the situation, which resulted in a short delay in [Richardson] receiving medical treatment." (*Id*. at Page ID # 526.)

The magistrate judge further reasoned that this Court has affirmed the denial of a motion for summary judgment based on a claim of qualified immunity in a similar case, *Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005). (*Id*. at Page ID # 526.) The magistrate judge explained that, in *Estate of Carter*, "a pretrial detainee informed a guard that she was experiencing chest pain, difficulty breathing, and trouble with her medication." (*Id*. at Page ID # 526.) The guard disregarded her complaints, and the detainee succumbed to a heart attack. (*Id*.) Quoting *Estate of Carter*, the magistrate judge explained, "even laypersons can be expected to know that a person showing the warning signs of a heart attack needs treatment *immediately* in order to avoid death." (*Id*. (emphasis in original) (internal quotations omitted).) Because evidence was produced that indicated the guard ignored the detainee's heart attack symptoms, the

detainee's estate had established the objective component of its Eighth Amendment deliberate indifference claim.  (*Id*.)

In addition to *Estate of Carter*, the magistrate judge also cited *Jones v. Pramstaller*, 678 F. Supp. 2d 609, 619 (W.D. Mich. 2009), and *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 847–48 (6th Cir. 2002), for the proposition that delays in medical treatment spanning from one hour to several hours may be sufficient to establish deliberate indifference in the context of an Eighth Amendment claim. (*Id*. at Page ID # 526.)  Regarding the Eighth Amendment claim, the magistrate judge ultimately recommended that CO Falk's motion for summary judgment based on qualified immunity be denied.  (*Id*. at Page ID # 528.)

### H.    CO Falk objects to the R&R.

CO Falk timely objected to the R&R on July 9, 2025, specific to the magistrate judge's recommendation that Richardson's Eighth Amendment claim proceed to trial.  (Def. Obj. to R&R, R. 64, Page ID # 533–545.)  He did not object to the R&R regarding the magistrate judge's recommendation to dismiss Richardson's Fourteenth Amendment claim and claim for injunctive relief.  (*Id*.)

CO Falk first argued the magistrate judge erred when it determined Richardson set forth a viable Eighth Amendment deliberate indifference claim. (*Id.* at Page ID # 536–537.) Regarding the objective component of the claim, CO Falk argued Richardson failed to place "verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment[,]" as required under *Napier*. (*Id.* at Page ID # 538.) CO Falk also argued Richardson did not present an objectively serious injury to him that required immediate medical attention. (*Id.* at Page ID # 539.) While recognizing the seriousness of a heart attack, CO Falk argued he did not observe Richardson to be distressed at the time of the interaction; Richardson had walked around the unit unassisted until he sat down in the wheelchair. (*Id.*) Also, the only physical symptom that was reported to CO Falk was complaints of chest pain, which he did not believe required immediate healthcare. (*Id.*) Given those facts, CO Falk argued Richardson could not establish the objective component of his deliberate indifference claim, and CO Falk was entitled to qualified immunity. (*Id.* at Page ID # 539–540.)

CO Falk also argued the magistrate judge erred by concluding Richardson satisfied the subjective component of his deliberate

indifference claim. (*Id*. at Page ID # 540.) CO Falk contended he did not believe Richardson was in any distress at the time of the incident. (*Id*.) He argued Richardson did not present any symptoms to him that led him to believe Richardson required immediate medical attention, and CO Falk was not a medical professional. (*Id*.) Because Richardson could not establish the subjective component of his deliberate indifference claim, CO Falk argued he was entitled to qualified immunity, and the magistrate judge erred by concluding to the contrary. (*Id*. at Page ID # 540–541.)

Lastly, CO Falk argued the magistrate judge erred by not analyzing whether CO Falk's actions violated clearly established law in January 2023. (*Id*. at Page ID # 541–544.) He argued the magistrate judge erroneously defined qualified immunity "at a high level of generality and concluded there was a general right that Richardson be sent to healthcare immediately." (*Id*. at Page ID # 541.) He further argued that "the specific question in this case is whether a delay of less than ten minutes constitutes deliberate indifference." (*Id*.)

Lastly, CO Falk argued the magistrate judge erred by shifting Richardson's burden to prove the law was clearly established at the

time of the incident to CO Falk, despite this Court's precedence holding to the contrary, such as *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). (*Id*. at Page ID # 541–542.) CO Falk contended Richardson failed to cite any legal authority to show "every reasonable official would know his conduct was unlawful as established by controlling authority or a robust consensus of cases of persuasive authority." (*Id*. at Page ID # 542 (internal quotations omitted).) Indeed, he failed to cite any legal authority establishing "a short delay in medical care of less than ten minutes amount[ed] to deliberate indifference." (*Id*.)

CO Falk, on the other hand, cited persuasive and controlling authority that established a brief, minutes-long delay in receiving medical care did not necessarily amount to deliberate indifference. (*Id*. at Page ID # 542–543 (citing *Goode*, 646 F. App'x 427; *Shimmel v. Michigan Dep't of Corr.*, Case No. 1:21-cv-358, 2023 U.S. Dist. LEXIS 46577, *13–14 (W.D. Mich. March 20, 2023).) CO Falk argued the magistrate judge did not consider either case but instead relied upon a series of cases that held hours-long delays (as opposed to mere minutes-long delays) could establish deliberate indifference where multiple medical symptoms were reported. (*Id*. at Page ID # 543–544.) Given

the noticeable difference in terms of length of delays and reported

symptoms in the cases relied on by the magistrate judge versus the

instant case, CO Falk argued the status of the law in January 2023 was

not sufficiently clear that a reasonable officer, such as himself, would

understand his conduct amounted to deliberate indifference, thus

entitling him to qualified immunity. (*Id.*) Richardson responded to CO

Falk's objections on July 11, 2025. (Pl. Resp., R. 65, Page ID # 546–

549.)

### I. The district court adopts the R&R over CO Falk's objections.

On September 9, 2025, the district court issued an order

overruling CO Falk's objections, adopting the R&R, and granting in

part and denying in part CO Falk's motion for summary judgment.

(Order, R. 66, Page ID # 551–564.) Specifically, the order dismissed

Richardson's Fourteenth Amendment claim and claim for injunctive

relief but denied CO Falk qualified immunity as it related to

Richardson's Eighth Amendment deliberate indifference claim. (*Id.*)

The district court first found that the magistrate judge did not err

when it concluded Richardson suffered an objectively serious injury.

(*Id*. at Page ID # 557.)  According to the district court, the evidence established Richardson approached CO Falk and complained of "bad chest pains," which "is one of the classic signs of an impending heart attack."  (*Id*. (quoting *Estate of Carter*, 408 F.3d at 311–12).)  The district court reasoned that even as a layperson, CO Falk "can be expected to know that a person showing the warning signs of a heart attack needs treatment immediately in order to avoid death."  (*Id*. (quoting *Estate of Carter*, 408 F.3d at 312).)  Therefore, the district court explained, a reasonable jury could find that Richardson experienced an obvious, objectively serious medical need.  (*Id*.)

As it related to CO Falk's reliance on *Napier* for the proposition that Richardson was required to "place verifying medical evidence" into the record to establish the seriousness of his medical needs, the district court rejected CO Falk's argument.  (*Id*. at Page ID # 557–558.)  Relying on *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004), the district court explained that *Napier* did not apply when the facts of a case "show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention[.]"  (*Id*. at Page ID # 557–558.)  Instead, the district court reasoned, "when there is an obvious

need for medical care, 'it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the treatment was not addressed within a reasonable time frame.' " (*Id*. at Page ID # 558 (quoting *Blackmore*, 390 F.3d at 900) (alterations in original).) Thus, according to the district court, "a reasonable jury could find that Richardson's complaints of bad chest pain demonstrated an obvious need for medical care, and that a layman like [CO] Falk would be able to recognize that need"; therefore, the district court concluded, the magistrate judge did not err when it found Richardson satisfied the objective component of his deliberate indifference claim. (*Id*.)

Turning to the subjective component, the district court found a reasonable jury could find that CO Falk knew of and disregarded Richardson's serious medical need. (*Id*. at Page ID # 559.) In coming to this conclusion, the district court noted that record evidence established that Richardson told CO Falk that he was having chest pains, needed medical care, and could "drop dead at any moment." (*Id*. (internal quotations omitted).) The district court also explained evidence suggested CO Falk told Richardson to return to his cell, despite his complaints and pleas for medical care. (*Id*.) While noting that CO Falk

was not a medical professional and denied ever "draw[ing] the inference" that Richardson was experiencing a substantial risk of harm or exhibiting distress in any way, the district court opined "a jury would be entitled to discount [these] explanation[s]." (*Id.* at Page ID # 560 (quoting *Estate of Carter*, 408 F.3d at 313).) Given that, the district court determined a reasonable jury could find CO Falk knew of and disregarded Richardson's serious medical needs; therefore, the district court found the magistrate judge did not err by concluding Richardson satisfied the subjective component of his deliberate indifference claim. (*Id.*)

Lastly, the district court determined the magistrate judge was right to deny CO Falk qualified immunity, though it did not endorse the magistrate judge's rationale for arriving at that conclusion. (*Id.* at Page ID # 560–564.) Without analyzing the cases relied on by CO Falk (i.e., *Goode*, and *Shimmel*) or the magistrate judge (i.e., *Estate of Carter*, *Jones*, or *Terrance*), the district court relied on *Tlamka v. Serrell*, 244 F.3d 628, 630 (8th Cir. 2001) — an Eighth Circuit case — for the proposition that a delay in medical care of less than ten minutes amounted to deliberate indifference. (*Id.* at Page ID # 562–564.)

In *Tlamka*, the district court explained, a prisoner suffered a heart attack and collapsed. (*Id.* at Page ID # 562 (citing *Tlamka*, 244 F.3d at 630).) Nearby prisoners began performing life-saving measures (CPR) on the prisoner, while another prisoner notified prison staff. *Tlamka*, 244 F.3d at 630–31. Upon arriving at the scene, prison officials ordered the intervening prisoners to stop CPR until medical staff arrived, which the prisoners did. (*Id.*) After ordering the prisoners to stop, none of the prison officials approached the ailing prisoner to check his pulse, continue CPR, or attempt to provide additional medical care. (*Id.*) At most, ten minutes passed between the prison officials ordering the other prisoners to stop CPR and medical personnel arriving to tend the prisoner. (*Id.*) The prisoner was subsequently transported to a hospital where he died soon after. (*Id.*)

The district court held "*Tlamka* is directly on point" to the instant case. (Order, R. 66, Page ID # 563) (emphasis in original.) It observed that in *Tlamka* the Eighth Circuit held the prison officials were not entitled to qualified immunity because "any reasonable officer would have known that delaying [the man's] emergency medical treatment for 10 minutes, with no good or apparent explanation for the delay, would

20

have risen to an Eighth Amendment violation." (*Id.*) Like the prison officials in *Tlamka*, the district court reasoned, CO Falk arguably delayed Richardson's treatment for around ten minutes "with no good explanation for the delay," which he should have known would rise to the level of an Eighth Amendment violation. (*Id.*) Noticeably, the district court did acknowledge that the prisoner in *Tlamka* presented much more severe symptoms of a heart attack than Richardson. (*Id.*) But the district court reasoned

> [T]hat distinction is irrelevant because in both cases, the symptoms were sufficiently dire and obvious that even a layperson would understand the need for immediate medical attention. Rather, the relevant comparison is how long the medical care was delayed and whether such a delay was reasonable under the circumstances.

(*Id.*) Accordingly, the district court held "*Tlamka* clearly establishes, an approximately ten-minute delay in providing medical care to someone displaying the symptoms of a heart attack could amount to deliberate indifference." (*Id.* at Page ID # 563–564.) Thus, the district court explained the magistrate judge correctly denied CO Falk qualified immunity.

CO Falk timely appealed. (Notice, R. 68, Page ID # 567–568.)

## STANDARD OF REVIEW

A district court's denial of summary judgment on qualified immunity grounds is reviewed de novo. *Brown v. Chapman*, 814 F.3d 436, 444 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013)). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making its determination, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

Once a defendant raises a qualified immunity defense, "the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (citation omitted). Although when ruling on a summary judgment motion, a court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party, "when a defendant raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must show that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly

established constitutional right." *Williams v. Maurer,* 9 F.4th 416, 430–31 (6th Cir. 2021) (citing *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020)).

## SUMMARY OF ARGUMENT

The district court erred as a matter of law when it found a reasonable jury could conclude Richardson established his Eighth Amendment deliberate indifference claim against CO Falk.  Richardson did not present CO Falk with an objectively sufficiently serious medical need that CO Falk perceived as requiring immediate medical attention.

The district court further erred as a matter of law when it denied CO Falk qualified immunity.  More specifically, it erred when it relied on a single out-of-circuit case and found it was clearly established that a delay in medical care of less than ten minutes amounted to deliberate indifference.

This Court should reverse the district court with respect to each error and grant summary judgment in favor of CO Falk for Richardson's Eighth Amendment claim.

# ARGUMENT

## I. CO Falk was entitled to qualified immunity because he did not violate an Eighth Amendment right that was clearly established at the time of the conduct at issue and the district court thus erred by denying summary judgment.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotations omitted). In making a qualified immunity determination, "[a] court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 224 (2009). Although courts may exercise their discretion in deciding which of the two prongs should be analyzed first, *Pearson*, 555 U.S. at 236, "[o]nce the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity," *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (internal quotations and citations omitted). See

also *Perez v. Oakland Cty.*, 466 F.3d 416, 427 (6th Cir. 2006) ("The burden of showing that the right was clearly established 'rests squarely with the plaintiff.'" (quoting *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999))).

In the present case, CO Falk is entitled to qualified immunity because Richardson cannot establish either prong of the test. First, CO Falk did not violate the Eighth Amendment. Second, his conduct did not violate a right that was clearly established at the time of the incident in January 2023.

### A. Richardson did not establish that CO Falk was deliberately indifferent to a serious medical need.

Richardson's claim fails on the first prong of the qualified immunity test because he cannot show that CO Falk violated the Eighth Amendment. Broadly speaking, punishments that lack penological justification or involve the unnecessary and wanton infliction of pain violate the Eighth Amendment's proscriptions, *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), including deliberate indifference to a prisoner's serious medical needs, *Estelle*, 429 U.S. at 104–06; *Napier*, 238 F.3d at 742. Put another way, the Eighth Amendment bans

"the gratuitous infliction of suffering."  *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The deliberate indifference standard has an objective and subjective component.  *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008).  To satisfy the objective component, a prisoner must establish he suffered a "sufficiently serious" medical need.  *Farmer*, 511 U.S. at 834.  And to satisfy the subjective component, the prisoner must establish that the prison official knew of his serious medical need and, despite that knowledge, disregarded or responded unreasonably to the medical need.  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

Moreover, "[t]he Supreme Court has long held that we may review the merits of a plaintiff's constitutional claims under § 1983 when deciding whether the district court correctly denied qualified immunity for those claims."  *New Albany Main Street Props v. Watco Cos, LLC*, No. 24-5375, 2025 WL 88943, at *3 (6th Cir. Jan. 14, 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 671–73 (2009); *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007); *Hartman v. Moore*, 547 U.S. 250, 257 n.5 (2006)).  "[Q]ualified immunity's legal test incorporates the constitutional merits because it asks whether the law governing a

constitutional claim was 'clearly established at the time' the defendant acted." *Id.* (citing *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "So a court cannot grant 'meaningful review' to a qualified-immunity defense without delving into the merits." *Id.* (citing *Chaney-Snell*, 98 F.4th at 710).

In this case, the district court found that a reasonable jury could conclude Richardson established the objective and subjective components of a viable Eighth Amendment deliberate indifference claim. (Order, R. 66, Page ID # 556–560.) It also held the status of the law was clearly established at the time of the incident such that a reasonable corrections officer like Falk would have understood his conduct was unlawful, and, therefore, he was not entitled to qualified immunity. (*Id.* at Page ID # 560–564.) The district court erred as a matter of law with respect to each finding, as discussed below.

> **1. The district court erred as a matter of law when it determined Richardson established the objective component of his Eighth Amendment deliberate indifference claim.**

The first step in the analysis is to determine whether the alleged deprivation was objectively sufficiently serious. A "serious medical need" is "one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (internal quotations and citations omitted); *see also Blackmore*, 390 F.3d at 899. If a prisoner's claim is based on an alleged delay in treatment (as opposed to a denial of treatment altogether), he must put forth evidence establishing that he suffered injury due to the delay in treatment. *See Napier*, 238 F.3d at 742 ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotations and citation omitted)). However, the requirement to place verifying medical evidence into the record established by *Napier* applies only in two circumstances: "where the plaintiff's deliberate indifference claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious." *Blackmore*, 390 F.3d at 898. As the *Blackmore* court explained, in those circumstances "medical proof is necessary to assess whether the delay caused a serious medical injury." *Id.* (citing *Napier*, 238 F.3d at 742).

In this case, Richardson cannot raise a genuine issue of material fact that the affliction he was suffering was objectively sufficiently serious. Prior to approaching CO Falk, surveillance footage shows that Richardson was casually walking around the unit in no apparent medical distress and without assistance. (Def. MSJ, R. 54-5, Page ID # 445, 8:44:12–8:44:35.) When he eventually approached CO Falk and allegedly reported having "bad chest pains" and requested to go to healthcare, the surveillance footage shows he still did not appear to be suffering any medical distress. (*Id*. at 8:44:35–8:45:39.) Prior to and during their brief exchange, Richardson is never observed having trouble breathing, labored movements, or exhibiting any other signs of a heart attack. (*Id*.) CO Falk further corroborated that Richardson did not appear to be in any distress at the time of their interaction. (*Id*. at R. 54–3, Page ID # 420, ¶ 9.) Then, following their brief conversation in the B Wing Base area, Richardson calmly walked away from CO Falk, through the A Wing Base area, and into the bubble where he eventually sat down in a wheelchair, all without any apparent difficulty. (*Id*. at 8:45:35–8:49:00.)

Those facts taken together clearly show that at the time of his contact with CO Falk, Richardson's affliction was not objectively sufficiently serious and was not obvious. Therefore, he was required to place in the record verifying medical evidence to establish the alleged delay in medical care attributable to CO Falk caused his serious medical injury. *Napier*, 238 F.3d at 742; *see also Blackmore*, 390 F.3d at 898. He did not do so. (Def. MSJ, R. 54, Page ID # 403–404.) Accordingly, Richardson cannot establish the objective component of his deliberate indifference claim.

The district court erred as a matter of law when it determined that a reasonable jury could conclude Richardson established the objective component of his claim. (Order, R. 66, Page ID # 556–558.) Relying on *Estate of Carter*, 408 F.3d at 311–12, the district court reasoned "bad chest pains" were "one of the 'classic signs of an impending heart attack.' " (*Id*. at Page ID # 557.) Therefore, even as a layperson, CO Falk could be "expected to know that a person showing the warning signs of a heart attack needs treatment immediately in order to avoid death." (*Id*.) (quoting *Estate of Carter*, 408 F.3d at 312). The district court further reasoned "Richardson's complaints of bad

chest pains demonstrated an obvious need for medical care, and that a layman like Falk would be able to recognize that need." (*Id.* at Page ID # 558.) Thus, according to the district court, *Napier* did not apply, and Richardson was not required to produce verifying medical records into the record. (*Id.*) Citing *Blackmore,* the district court explained "when there is an obvious need for medical care, 'it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the treatment was not addressed within a reasonable time frame.' " (*Id.* at Page ID # 558.)

The district court erred with respect to its reliance on *Estate of Carter*, which was decided in the context of much more significant and specific medical symptoms being reported to officials, including difficulty breathing, chest pain, and the detainee hadn't taken her heart medication in three days. *Estate of Carter*, 408 F.3d at 307, 309. In addition to the numerous, severe symptoms that were reported, evidence also established that the detainee had "cried loudly for help and continued to complain that her chest hurt[.]" *Id.* at 307. Comparatively, in this case Richardson essentially only reported having "bad chest pains" and that he "could die at any given minute." (Def.

MSJ, R. 54–4, Page ID # 440, ln. 2–3, 9–11.) He did not complain of any difficulty breathing, and he did not report having any medication issues. (*Id.*) Moreover, there is no evidence Richardson "loudly" called for help. (*Id.*) While the district court reasoned that even a layperson, such as CO Falk, could be "expected to know that a person showing the *warning signs* of a heart attack needs treatment immediately[,]" (Order, R. 66, Page ID # 557) (emphasis added), the reality is that the only physical "warning sign" that CO Falk was apprised of was chest pain. (Def. MSJ, R. 54–4, Page ID # 440, ln. 2–3.) Neither the district court nor Richardson cited any legal authority purporting to establish that reports of chest pain alone were sufficient to establish an objectively sufficiently serious medical need.

The district court also erred with respect to its reliance on *Blackmore* as to whether Richardson's medical needs were met in a reasonable time. In *Blackmore*, a detainee suffered for two days following continuous pleas for medical care. *Blackmore*, 390 F.3d at 900 ("[A]fter Blackmore suffered for two days, making unrelenting complaints and vomiting, a nurse identified 'classic signs of appendicitis' and doctors performed an appendectomy."). The evidence

established that after verbally complaining of abdominal pain and requesting medical care, the detainee submitted an additional request for medical care describing "'sharp' and 'extreme abdominal pain in the lower area'" that had lasted twenty-six hours. *Id.* at 894. It further established that the detainee had vomited, and the medication he had previously been given did not provide him any relief for his symptoms. (*Id.*) That is far from the case at hand. Richardson first approached CO Falk at approximately 8:44 p.m. with only complaints of chest pain. (Def. MSJ, R. 54–4, Page ID # 439, ln. 22–25; Page ID # 440, ln. 1–3.) There is no evidence he displayed any physical signs of medical distress, such as vomiting. (*Id.*) There is similarly no evidence he complained of medical distress on more than one occasion. (*Id.*) Richardson was subsequently transported from the unit to healthcare by 8:52 p.m. (*Id.* at Page ID # 441, ln. 14–22.) Thus, the alleged delay attributable to CO Falk from the time Richardson first approached CO Falk to the time Richardson was taken to healthcare was only eight minutes. While two days may be an unreasonable time to wait for medical care as was the case in *Blackmore*, the same cannot be said about waiting eight minutes. Indeed, it was entirely reasonable for CO Falk to order

Richardson to return to his cell while he called healthcare given that multiple other prisoners were transiting the unit at the time of their brief interaction and given that Richardson had not displayed any physical signs of illness. (*Id.* at R. 54–3, Page ID # 420–421, ¶¶ 10–11; *Id.* at Page ID # 445, 8:44:35–8:45:39.) Thus, the district erred in relying on *Blackmore*.

Lastly, the district court erred with respect to its finding that *Napier* was not applicable to the present case because Richardson's condition presented an obvious need for medical care. (Order, R. 66, Page ID # 557–558.) As discussed above, Richardson's need for medical care was not obvious. Prior to, during, and after his conversation with CO Falk, surveillance footage shows Richardson walking around the unit unassisted without displaying any outward signs of medical distress. (Def. MSJ, R. 54-5, Page ID # 445, 8:44:12–8:49:00.) The only physical malady Richardson reported to CO Falk was "bad chest pain." (*Id.* at R. 54–4, Page ID # 440, ln. 2–3.) Consequently, it was not obvious to CO Falk that Richardson required immediate medical care when they briefly spoke. (*Id.* at R. 54–3, Page ID # 420, ¶ 9.) Given that, under *Napier*, Richardson was required to place verifying medical

evidence, such as expert testimony, into the record to establish the alleged delay in medical care attributable to CO Falk caused his serious medical injury.  *Napier*, 238 F.3d at 742.  He did not do so, which is fatal to his claim.

Given the foregoing, Richardson cannot raise a genuine issue that the deprivation was objectively serious.  Furthermore, the district court erred as a matter of law with respect to its reliance on *Estate of Carter* and *Blackmore*, and with respect to its finding that *Napier* was inapplicable to the instant case.  Accordingly, the district court's determination as to the objective component of Richardson's Eighth Amendment deliberate indifference claim should be reversed, and summary judgment should be entered in favor of CO Falk.

> **2.    The district court erred as a matter of law when it determined Richardson established the subjective component of his Eighth Amendment deliberate indifference claim.**

Turning to the subjective component, the prisoner must establish that the defendant possessed a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.  To be liable under the Eighth Amendment, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

35

draw the inference." *Id*. at 837. Deliberate indifference, however, requires "something more than mere negligence." *Id*. at 835. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838.

In this case, Richardson cannot raise a genuine issue of material fact that CO Falk knew of and disregarded a substantial risk of serious harm to Richardson. At the time of their brief interaction, CO Falk was not a medical professional. (Def. MSJ, R. 54–3, Page ID # 420, ¶ 4.) He did not believe Richardson was in distress, and he did not believe Richardson presented any symptoms that required emergency medical care. (*Id*. at ¶ 9.) This is corroborated by the surveillance footage showing Richardson casually walking up to CO Falk without displaying any outward signs of medical distress. (*Id*. at R. 54-5, Page ID # 445, 8:44:35–8:45:39.) If CO Falk failed to alleviate a significant risk to Richardson that he should have but did not perceive, it would not be a form of punishment. *Farmer*, 511 U.S. at 837.

Furthermore, while CO Falk admits he ordered Richardson to return to his cell; he did not do so because he wanted to deny

Richardson medical care. (Def. MSJ, R. 54–3, Page ID # 420–421, ¶¶ 10–12.) On the contrary, he ordered Richardson to return to his cell because there were multiple other unsecured prisoners moving around the unit at the time of their interaction, which is again substantiated by surveillance footage. (*Id.* at Page ID #421, ¶ 11; *Id.* at R. 54-5, Page ID # 445, 8:44:35–8:45:39.) Also, although Richardson contends that CO Falk told him that he would not call healthcare, Richardson acknowledges that he did go to healthcare within eight minutes of making his request. (Def. MSJ, R. 54–4, Page ID # 439, ln. 20–25; *Id.* at Page ID # 440, ln. 1–25; *Id.* at Page ID # 1–22.) Accordingly, Richardson cannot establish that CO Falk knew of and disregarded a substantial risk of serious harm to Richardson.

Nevertheless, the district court determined Richardson could establish the subjective component of his claim. (Order, R. 66, Page ID # 558–560.) According to the district court, the evidence established Richardson complained of chest pains and needing medical care to CO Falk, and CO Falk told Richardson to go back to his cell. (*Id.*) Again, relying on *Estate of Carter*, the district court reasoned "a jury would be entitled to discount" CO Falk's explanations that he was not a medical

professional and did not believe Richardson was in distress or needed immediate medical attention. (*Id*. at Page ID # 560.) Further citing *Estate of Carter*, the district court explained "Richardson need not have 'offer[ed] explicit evidence that [Falk] in fact drew the inference' to survive summary judgment, given Richardson's 'strong showing on the objective component.' " (*Id*.) (alterations in original.)

The district court erred as a matter of law because, as previously discussed, Richardson cannot establish the objective component of his deliberate indifference claim. Thus, the district court erred when it held Richardson had presented a "strong showing on the objective component[,]" and, therefore, he was not required to present evidence that CO Falk actually drew the inference that a substantial risk of serious harm threatened him.

The district court also erred by failing to consider the surveillance footage in relation to its analysis of the subjective component. In cases where video evidence is available, the court should "[view] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). This Circuit has recognized the importance of considering video evidence at the dismissal and summary judgment stage. *Bell v.*

*City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (stating that "when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos."); *see also, Raimey v. City of Niles*, 77 F.4th 441, 447 (6th Cir. 2023) (stating "[w]hen the record contains a videotape capturing the events in question, we may not adopt a version of the facts for purposes of ruling on a motion for summary judgment that blatantly contradict[s] the asserted version of events such that no reasonable jury could believe it.") (internal quotations and citation omitted). The video evidence in this case depicts Richardson casually approaching CO Falk, then engaging in a conversation. (Def. MSJ, R. 54-5, Page ID # 445, 8:44:35–8:45:39.) It does not depict Richardson exhibiting any signs of physical pain or difficulty, such as stumbling, unsteady gait, or imbalance. (*Id*.) As CO Falk and Richardson spoke, Richardson appears in no apparent distress — he again is not observed giving any indication that he was actively experiencing a medical emergency for CO Falk to perceive. (*Id*.) Indeed, the surveillance footage corroborates CO Falk's subjective belief that Richardson did not require emergency care because he did not believe Richardson was in distress. (*Id*.; *Id*. at R. 54–3, Page ID # 420,

¶ 9.)  The district court erred by failing to consider the surveillance footage in this regard.

Accordingly, Richardson cannot raise a genuine issue of material fact with respect to the subjective component of his Eighth Amendment claim, and the district court erred as a matter of law when it held to the contrary.  As such, the district court should be reversed, and summary judgment should be granted in favor of CO Falk.

**B.  The district court erred as a matter of law when it determined CO Falk violated a clearly established right.**

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  That is to say, the constitutionality of an officer's conduct must have been placed "beyond debate" by existing law. *Id.*

A "clearly established" legal principle is one that has "a sufficiently clear foundation in then-existing precedent." *Id.*  It must be "settled law, [ ] which means it is dictated by controlling authority or a

robust consensus of persuasive authority[.]" *Id.* (internal quotations and citations omitted). "It is not enough that a rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

The "clearly established" standard demands "a high 'degree of specificity.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). It "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* The parameters of the legal principle "must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Indeed, the Supreme Court has cautioned that "courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* at 63–64.

In this case, CO Falk is entitled to qualified immunity for two reasons. First, as established above, Richardson cannot establish a constitutional violation. Thus, the "inquiry ends" and CO Falk is

entitled to qualified immunity. *Perez*, 466 F.3d at 427 ("If the plaintiff does not establish the violation of a constitutional or statutory right, the inquiry ends there and the official is entitled to immunity.") Second, as of the time of the alleged violation in January 2023, it was not clearly established that a reasonable officer, such as CO Falk, would have understood that a delay in medical care of only eight minutes amounted to deliberate indifference in violation of the Eighth Amendment.

For instance, in *Goode*, 646 F. App'x 427, a prison guard waited five to seven minutes before checking on a "seriously ill" inmate who other prisoners reported "was not looking good, was making some type of gurgling sounds with heavy snoring, and had foam coming out of his mouth." *Id*. at 429, 431 (internal quotations omitted). Following the delay, the guard went to the prisoner's cell and called for medical assistance. *Id*. The prisoner was subsequently brought to a local hospital where he died of "heroin intoxication." *Id*.

This Court held the guard's conduct of delaying "checking on" an ill prisoner for five to seven minutes did not violate clearly established law. *Id*. at 431. In so holding, the *Goode* court explained the guard would not have suspected "that [the prisoner] had ingested a lethal dose

of heroin" and was at risk of dying because he had witnessed the prisoner leaving the shower and sleeping in what appeared to be a normal manner before he was notified of the prisoner's reported condition. *Id.*

*Goode* is akin to the present case primarily because the delays attributable to the prison officials were within one minute of one another. In *Goode*, the delay attributable to the guard was five to seven minutes, *Goode*, at 429, and in this case, the delay attributable to CO Falk was only eight minutes. (Def. MSJ, R. 54–4, Page ID # 439, ln. 22–25; *Id.* at Page ID # 440, ln. 1–3; *Id.* at Page ID # 441, ln. 14–21.) Similarly, CO Falk would not have suspected Richardson was experiencing a heart attack based on Richardson's complaints of chest pain alone and the fact that surveillance footage shows Richardson casually walking around the unit in no apparent medical distress and without assistance. (Def. MSJ, R. 54-5, Page ID # 445, 8:44:12–8:44:35.)

Nevertheless, the district court held the status of the law was clearly established at the time of the incident such that a reasonable corrections officer like Falk would have understood his conduct was unlawful; thus, he was not entitled to qualified immunity. (Order, R.

66, Page ID # 560–564.)  Specifically, the district court found the Eighth Circuit case *Tlamka*, 244 F.3d 628, was "directly on point" and established that a short delay in medical care of less than ten minutes amounted to deliberate indifference.  (*Id*. at Page ID # 562–564.)

The district court erred as a matter of law with respect to its qualified immunity analysis.  To begin with, *Tlamka* is an Eight Circuit case and out-of-circuit case law does not constitute clearly established precedent.  *Bell v. City of Southfield*, 37 F.4th 362, 367–68 (6th Cir. 2022)  Indeed, this Court has a "general rule against using out-of-circuit caselaw in the 'clearly established' inquiry."  *Burnett v. Griffith*, 33 F.4th 907, 913 (6th Cir. 2022) (citing *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020)).  *Tlamka* is an Eighth Circuit case and is therefore not a controlling authority in this Circuit.

There is a narrow exception to this rule for a robust consensus of persuasive authority.  *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 606 (6th Cir. 2025) ("[O]ur sister circuits' case law is 'usually irrelevant' to the clearly established inquiry, save for the extraordinary case that announces a right 'clearly foreshadowed' by the direct holding of our own case law so that the officers is left with 'no doubt' as to whether his

conduct was lawful." (citing *Ashford,* 951 F.3d at 804)).  *Tlamka* does

not meet that standard.

To begin with, *Tlamka* is a single case.  As such, it hardly

constitutes a "robust consensus of persuasive authority."  (*Id*.)  By

nature a "consensus" requires more than one of something; a "robust

consensus" even more so.  Therefore, it cannot be said that it is settled

law that a delay of medical care for less than ten minutes amounts to

deliberate indifference.  In addition, *Tlamka* is not persuasive because

it is easily distinguished.

*Tlamka* differs significantly from the present case.  As the district

court acknowledged, the heart attack symptoms presented to the

corrections officers in *Tlamka* were much more severe than the

symptom Richardson reported to CO Falk.  Richardson essentially only

reported having bad chest pains, (Def. MSJ, R. 54–4, Page ID # 440, ln.

2–3), whereas the prisoner in *Tlamka* unexpectedly collapsed

unconscious and began experiencing skin discoloration.  *Tlamka*, 244

F.3d at 630.  The district court erroneously dismissed this significant

distinction stating that it was "irrelevant."  (Order, R. 66, Page ID #

563.)  Citing *Tlamka*, the district court stated, "the relevant comparison

is how long the medical care was delayed and whether such a delay was reasonable under the circumstances." (*Id.*)

But the *Tlamka* court did not state that that was the relevant comparison. To the contrary, the *Tlamka* court explained the relevant comparison "depends on the seriousness of an inmate's medical condition and on the reason for the delay[.]" *Tlamka*, 244 F.3d at 635. In addition, video shows Richardson casually walking around without assistance—a far cry from the situation in *Tlamka*. (Def. MSJ, R. 54-5, Page ID # 445, 8:44:12–8:44:35.) Thus, the district court erred as a matter of law when it misinterpreted the holding in *Tlamka* and rendered the significant distinction in reported symptoms irrelevant for purposes of determining whether CO Falk was entitled to qualified immunity.

The district court also erred as a matter of law when it failed to consider CO Falk's explanation for why he briefly delayed Richardson's medical care. Citing *Tlamka*, district court explained CO Falk "should have known that delaying Richardson's medical treatment for 10 minutes at most, *with no good explanation*, would have risen to an

Eighth Amendment violation." (Order, R. 66, Page ID # 563) (emphasis added).)

But CO Falk had a "good explanation" for briefly delaying Richardson's medical care — the district court simply failed to consider it. Indeed, following Richardson's request for healthcare, CO Falk told him to return to his cell "because multiple prisoners were moving around in the [unit][,]" and that he would call healthcare. (Def. MSJ, R. 54–3, Page ID # 420–421, ¶¶ 10–11.) The surveillance footage corroborates that multiple other unsecured prisoners were moving about the unit before, during, and after their brief conversation. (*Id.* at R. 54-5, Page ID # 445, 8:44:12–8:49:00.) Given that "[p]risons are inherently dangerous institutions," *Lewis v. Casey*, 518 U.S. 343, 391 (1996), that "house persons convicted of serious crimes," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), diligently monitoring prisoner movements undoubtedly qualifies as a "good explanation" for why CO Falk ordered Richardson to return to his cell while he called healthcare.

A reasonable corrections officer like Falk would not have understood delaying Richardson medical care for that short amount of

time violated his rights.  The district court erred as a matter of law when it held to the contrary, and, therefore, it should be reversed.

## CONCLUSION AND RELIEF REQUESTED

The district court erred as a matter of law when it found a reasonable jury could conclude Richardson established the necessary components of his Eighth Amendment deliberate indifference claim.  It further erred as a matter of law when it found CO Falk was not entitled to qualified immunity.  CO Falk respectfully asks this Court to reverse the district court with respect to each error and grant summary judgment on the basis of qualified immunity in favor of CO Falk for Richardson's Eighth Amendment claim.

Respectfully submitted,

*/s/ Lars H. Kivari*
Assistant Attorney General
Counsel of Record
Attorney for Defendant-Appellant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
KivariL@michigan.gov

Dated: January 14, 2026

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words.  This document contains 9,507 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

*/s/ Lars H. Kivari*
Assistant Attorney General
Counsel of Record
Attorney for Defendant-Appellant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
KivariL@michigan.gov

## CERTIFICATE OF SERVICE

I certify that on January 14, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*/s/ Lars H. Kivari*
Assistant Attorney General
Counsel of Record
Attorney for Defendant-Appellant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
KivariL@michigan.gov

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendant-Appellee, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 02/28/2023 | R. 1 | 1-4 |
| Am. Pet. | 02/28/2023 | R. 3 | 14 |
| Order | 05/15/2023 | R. 7 | 4-16 |
| Pl Mot to Amend | 06/06/2023 | R. 9 | 19-20 |
| Order | 06/15/2023 | R. 11 | 38-41 |
| Pl 2nd Mot Am Complaint | 07/11/2023 | R. 13 | 44-49 |
| Def MSJ | 01/28/2025 | R. 54 | 389-445 |
| Pl. Supp. Br | 02/12/2025 | R. 58 | 463-459 |
| R&R | 06/25/2025 | R. 63 | 519-532 |
| Def Obj to R&R | 07/09/2025 | R. 64 | 533-545 |
| Pl Resp | 07/11/2025 | R. 65 | 546-549 |
| Order | 09/03/2025 | R. 66 | 551-564 |
| Notice | 09/26/2025 | R. 68 | 567-568 |