No. 25-1867

In the

# United States Court of Appeals for the Sixth Circuit

**Larry Richardson**,

*Plaintiff-Appellee,*

v.

**Nathan Falk**,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan
No. 2:23-cv-10488, Susan K. DeClercq, *District Judge*

## Brief of Plaintiff-Appellee Larry Richardson

<table>
<tr>
<td>

WILLIAM & MARY LAW SCHOOL
Appellate & Supreme Court Clinic
PO Box 8795
Williamsburg, VA 23187
Student Counsel:
  Hayden Miller
  Elle Rickman
  Trey Rogers

</td>
<td>

Bryan Lammon
FINAL DECISIONS PLLC
8401 Maryland Drive Suite 8197
Richmond, VA 23294
757-204-5896
bryan@finaldecisions.org

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20033

</td>
</tr>
</table>

March 18, 2026

*Attorneys for Plaintiff-Appellee*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-1867          Case Name: Larry Richardson v. Nathan Falk

Name of counsel:  Bryan Lammon

Pursuant to 6th Cir. R. 26.1,  Larry Richardson
                               *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ March 18, 2026 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Bryan Lammon

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

## Table of Contents

Table of Authorities .................................................................................iii

Statement Regarding Oral Argument........................................................ 1

Jurisdictional Statement ........................................................................... 1

Statement of the Issues.............................................................................. 2

Introduction ............................................................................................... 3

Statement of the Case ................................................................................ 5

    A. Factual background ........................................................................ 6

    B. Procedural background ................................................................... 8

Summary of the Argument ........................................................................ 9

Argument .................................................................................................. 11

    A. This Court lacks jurisdiction over Falk's arguments
       that dispute the factual basis for the District Court's
       immunity denial .......................................................................... 12

        1. This Court lacks jurisdiction over fact-based
           challenges to the denial of qualified immunity........................ 13

        2. Falk's arguments concerning the obviousness of
           Richardson's medical need and Falk's knowledge of
           that need are outside this Court's jurisdiction ......................... 20

        3. The video evidence does not blatantly contradict the
           facts the District Court determined a reasonable
           jury could find ........................................................................... 23

    B. The District Court correctly denied qualified immunity
       on Richardson's medical-treatment theory .................................... 26

        1. To the extent this Court can review the obviousness
           of Richardson's serious medical need, a jury could
           find that this need was obvious ................................................ 26

        2. To the extent this Court can review Falk's
           knowledge of Richardson's serious medical need, a
           jury could find that Falk had that knowledge ......................... 31

i

3.  Falk's complete denial of any medical care was disregard ................................................................. 33

4.  The illegality of Falk's conduct was clear ................................ 37

Conclusion ...................................................................................... 42

Certificate of Compliance .............................................................. 44

Sixth Circuit Rule 30(g)(1) Designation of Relevant District Court Documents ............................................................................. 45

Certificate of Service ..................................................................... 46

# Table of Authorities

**Cases**

*Abel v. Miller,*
  904 F.2d 394 (7th Cir. 1990)............................................................. 17

*Adams v. Blount County,*
  946 F.3d 940 (6th Cir. 2020)....................................... 2, 17–18, 20, 24

*Anderson-Santos v. Kent County,*
  94 F.4th 550 (6th Cir. 2024) ........................................................ 18–19

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................... 14, 16

*Ashford v. Raby,*
  951 F.3d 798 (6th Cir. 2020).......................................................... 39, 42

*Barry v. O'Grady,*
  895 F.3d 440 (6th Cir. 2018).......................................................... 18, 20

*Baynes v. Cleland,*
  799 F.3d 600 (6th Cir. 2015)............................................................... 38

*Beauford v. Mesa County,*
  35 F.4th 1248 (10th Cir. 2022) ........................................................... 35

*Behrens v. Pelletier,*
  516 U.S. 299 (1996)............................................................................ 14

*Bell v. City of Southfield,*
  37 F.4th 362 (6th Cir. 2022) ........................................................ 23–24

*Blackmore v. Kalamazoo County,*
  390 F.3d 890 (6th Cir. 2004)...................................... 12, 26, 31, 34–36

*Bozeman v. Orum,*
  422 F.3d 1265 (11th Cir. 2005)........................................................... 36

*Brown v. Chapman,*
  814 F.3d 436 (6th Cir. 2016)...................................................... 1, 5, 11

*Catlin v. United States,*
  324 U.S. 229 (1945)............................................................................ 13

*Cheeks v. Belmar*,
  80 F.4th 872 (8th Cir. 2023) .............................................................. 21

*Clark v. Louisville-Jefferson County Metro Gov't*,
  130 F.4th 571 (6th Cir. 2025) (per curiam) ..................................... 14

*Colson v. City of Alcoa*,
  No. 20–6084, 2021 WL 3913040 (6th Cir. Sept. 1, 2021)
  (unpublished) ............................................................................... 20–21

*Comstock v. McCrary*,
  273 F.3d 693 (6th Cir. 2001).............................................................. 21

*DiLuzio v. Village of Yorkville*,
  796 F.3d 604 (6th Cir. 2015)........................................................ 11, 18

*Dominguez v. Corr. Med. Servs.*,
  555 F.3d 543 (6th Cir. 2009).............................................................. 31

*Est. of Carter v. City of Detroit*,
  408 F.3d 305 (6th Cir. 2005)................................ 22, 27, 29, 35–36, 38

*Estelle v. Gamble*,
  429 U.S. 97 (1976)....................................................................... 12, 37

*Farmer v. Brennan*,
  511 U.S. 825 (1994)............................................................... 12, 21, 31

*Gaspers v. Ohio Dept. of Youth Servs.*,
  648 F.3d 400 (6th Cir. 2011).............................................................. 39

*Gillespie v. U.S. Steel Corp.*,
  379 U.S. 148 (1964)............................................................................ 13

*Gillispie v. Miami Township*,
  18 F.4th 909 (6th Cir. 2021) ...................................................... 5, 14, 18

*Gillman v. City of Troy*,
  126 F.4th 1152 (6th Cir. 2025) .................................................... 19–20

*Goode v. Berlanga*,
  646 F. App'x 427 (6th Cir. 2016) ................................................. 41–42

*Griffith v. Kattoula*,
  No. 25-1107, 2026 WL 311606 (6th Cir. Jan. 7, 2026)
  (unpublished) .................................................................................... 20

iv

*Grote v. Kenton County,*
85 F.4th 397 (6th Cir. 2023) ........................................................ 20, 30

*Groth v. Hill,*
No. 25-1053, 2026 WL 674352 (6th Cir. Mar. 10, 2026)
(unpublished) ............................................................................. 20

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ............................................................ 11, 15, 37

*Harrison v. Ash,*
539 F.3d 510 (6th Cir. 2008) ......................................................... 18

*Hodges v. Abram,*
138 F.4th 980 (6th Cir. 2025) ................................................... 26–27

*Hoover v. Due,*
152 F.4th 749 (6th Cir. 2025) .......................................................... 2

*Hope v. Pelzer,*
536 U.S. 730 (2002) ................................................................. 37–38

*Hopper v. Plummer,*
887 F.3d 744 (6th Cir. 2018) ......................................................... 27

*Hulon v. City of Lansing,*
No. 23-1937, 2025 WL 817492 (6th Cir. Mar. 14, 2025)
(unpublished) ............................................................................. 27

*Humes v. Jones,*
109 F.4th 1112 (8th Cir. 2024) ...................................................... 21

*Johnson v. Jones,*
515 U.S. 304 (1995) .......................................................... 1, 13–18

*Jones v. Minn. Dep't of Corr.,*
512 F.3d 478 (8th Cir. 2008) ......................................................... 21

*Kindl v. City of Berkley,*
798 F.3d 391 (6th Cir. 2015) ............................................. 22, 24, 38

*Landis v. Phalen,*
297 F. App'x 400 (6th Cir. 2008) ................................................... 24

*LaPlante v. City of Battle Creek,*
30 F.4th 572 (6th Cir. 2022) ......................................................... 24

*Lucas v. Turn Key Health Clinics, LLC,*
58 F.4th 1127 (10th Cir. 2023) .......................................................... 35

*Mata v. Saiz,*
427 F.3d 745 (10th Cir. 2005)................................................... 28, 38

*McDonald v. Flake,*
814 F.3d 804 (6th Cir. 2016)............................................................ 11

*Mitchell v. Forsyth,*
472 U.S. 511 (1985)................................................................ 1, 14–16

*Napier v. Madison County,*
238 F.3d 739 (6th Cir. 2001).......................................................... 31

*Pearson v. Callahan,*
555 U.S. 223 (2009)......................................................................... 37

*Perez v. Oakland County,*
466 F.3d 416 (6th Cir. 2006)............................................................ 39

*Phillips v. Roane County,*
534 F.3d 531 (6th Cir. 2008)............................................................ 38

*Plemmons v. Roberts,*
439 F.3d 818 (8th Cir. 2006)............................................................ 28

*Ramsey v. Rivard,*
110 F.4th 860 (6th Cir. 2024) ......................................................... 24

*Rhodes v. Michigan,*
10 F.4th 665 (6th Cir. 2021) ...................................................... 39–40

*Russell v. Lumitap,*
31 F.4th 729 (9th Cir. 2022) ........................................................... 28

*Scott v. Harris,*
550 U.S. 372 (2007)............................................................. 18, 23–24

*Sealock v. Colorado,*
218 F.3d 1205 (10th Cir. 2000).................................................. 27–28

*Siegert v. Gilley,*
500 U.S. 226 (1991)......................................................................... 16

*Summar v. Bennett,*
157 F.3d 1054 (6th Cir. 1998).......................................................... 39

*Tlamka v. Serrell,*
244 F.3d 628 (8th Cir. 2001)........................................................ 35, 40

*Valderrama v. Rousseau*
780 F.3d 1108 (11th Cir. 2015)........................................................ 35

*Watkins v. City of Battle Creek,*
273 F.3d 682 (6th Cir. 2001)........................................................ 33, 37

*Wenk v. O'Reilly,*
783 F.3d 585 (6th Cir. 2015)........................................................ 39–40

*Will v. Hallock,*
546 U.S. 345 (2006).................................................................... 15

*Williams v. Maurer,*
9 F.4th 416 (6th Cir. 2021) .............................................................. 14

*Yates v. City of Cleveland,*
941 F.2d 444 (6th Cir. 1991)............................................................. 17

**Other Authorities**

Joseph P. Ornato & Mary M. Hand, *Warning Signs of a Heart Attack,*
104 Circulation 1210 (2001) ........................................................... 28

## Statement Regarding Oral Argument

Plaintiff-Appellee Larry Richardson requests oral argument, which will assist this Court in determining if Falk's arguments are within this Court's appellate jurisdiction and, if they are, to clarify the legal issues and facts in the case.

## Jurisdictional Statement

Falk's Jurisdictional Statement is not entirely correct. He is correct regarding the District Court's subject-matter jurisdiction and the timeliness of his appeal. And Falk is correct that this Court generally has appellate jurisdiction to hear appeals from denials of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 527–30 (1985); *Brown v. Chapman*, 814 F.3d 436, 443–44 (6th Cir. 2016).

But Falk's jurisdictional statement neglects a significant caveat. As explained below, the scope of this appeal is limited. In an appeal from the denial of qualified immunity, this Court normally lacks jurisdiction to review a district court's determination of the facts a reasonable jury could find. *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). This Court must instead take those facts as given and address only the abstract legal question of whether those facts show a violation of clearly

1

established law. The same is true for defendants—they "must concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Hoover v. Due*, 152 F.4th 749, 754 (6th Cir. 2025) (quotation marks omitted). Arguments that fail to do so are outside this Court's appellate jurisdiction. *E.g.*, *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020).

Here, several of Falk's arguments dispute the District Court's determination of the facts a reasonable jury could find. Nothing in the record blatantly contradicts those facts. This Court accordingly lacks jurisdiction over these arguments.

## Statement of the Issues

1. For this Court to have jurisdiction over an immediate appeal from the denial of qualified immunity, defendants normally must concede (for purposes of the appeal) the facts the district court determined a reasonable jury could find. According to the District Court, a reasonable jury could find that the plaintiff's suffering from a heart attack would have been obvious to a layperson. A reasonable jury could also find that the defendant (a prison guard) knew of this serious medical need. In this appeal from the denial of qualified immunity, the

2

defendant disputes these facts. Does this Court have jurisdiction over these disputes?

2. Prison guards act with deliberate indifference to a serious medical need when they know an inmate is experiencing a life-threatening condition and do not promptly seek medical attention. Here, the plaintiff told a prison guard that he was experiencing chest pains and felt like he could drop dead from the impending heart attack. The guard nevertheless refused to call for medical help and ordered the plaintiff to go back to his cell. Did the guard act with deliberate indifference in violation of clearly established law?

## Introduction

In this action, Plaintiff-Appellee Larry Richardson seeks to hold accountable Defendant-Appellant Nathan Falk for his deliberate indifference to Richardson's suffering from a heart attack. While being held by the Michigan Department of Corrections, Richardson felt the symptoms of that impending heart attack, namely chest pain and a fear of dying. Richardson told Falk (who was a guard at the prison) of his symptoms. But rather than call for medical treatment, Falk told Richardson to go back to his cell and not to "drop dead on [Falk's] base."

3

(R. & R., R. 63, Page ID # 525.) Shortly thereafter, someone else at the prison thankfully came to Richardson's rescue and took him to healthcare, where Richardson suffered a severe heart attack.

Richardson sued Falk for violating Richardson's Eighth Amendment right to adequate medical treatment. The District Court denied Falk's motion for summary judgment on qualified-immunity grounds, determining that genuine fact issues existed as to the obviousness of Richardson's serious medical need and Falk's knowledge of that need. Falk now appeals from that decision. And he focuses much of his argument on these two fact disputes.

This Court should affirm for at least two reasons. *First*, many of Falk's arguments improperly dispute the factual basis for the District Court's denial of qualified immunity. And in appeals from the denial of qualified immunity, this Court normally lacks jurisdiction to review the District Court's determination of the facts a reasonable jury could find. No exception to that rule applies here. So this Court lacks jurisdiction over Falk's arguments about the obviousness of Richardson's medical need and Falk's knowledge of that need.

*Second*, a reasonable jury could find that Falk violated Richardson's

4

clearly established rights. This Court and others have long held that prison guards cannot completely deny medical care to inmates suffering from obviously serious medical conditions such as heart attacks. But that is precisely what Falk did. A reasonable jury could find that Richardson was obviously having a heart attack and that Falk knew as much. Falk's decision to send Richardson back to his cell with instructions not to die was disregard. And Falk had more than fair notice that his conduct violated the Eighth Amendment.

## Statement of the Case

The facts relevant to this appeal are both straightforward and disputed. Because this is an immediate appeal from the denial of summary judgment on qualified-immunity grounds, this Court must normally take as given the facts the District Court determined a reasonable jury could find. *Brown*, 814 F.3d at 444. Richardson accordingly draws heavily from the Magistrate Judge's Report and Recommendation and the District Court's opinion for his factual background. *See Gillispie v. Miami Township*, 18 F.4th 909, 912 (6th Cir. 2021) ("Because the scope of the defendant's appeal is so circumscribed, we need look no further than the district court's opinion,

and we often may be able merely to adopt the district court's recitation of facts and inferences." (quotation marks omitted)).

## A. Factual background

Plaintiff-Appellee Larry Richardson is an incarcerated person in the custody of the Michigan Department of Corrections. During a religious service on an evening in January 2023, Richardson's heart began to race. (Order, R. 66, Page ID # 552.) This was not uncommon for Richardson. (Richardson Dep., R. 54–4, Page ID # 434:8–17.) So he took some Nitrol pills (a medication for his heart condition). (Order, R. 66, Page ID # 552.) But his chest pain did not subside. (Order, R. 66, Page ID # 552.) Richardson then went looking for help. (Order, R. 66, Page ID # 552.)

Richardson found Defendant-Appellant Nathan Falk, a correctional officer at the institution.[1] Around 8:43 PM, Richardson told Falk he was

---

[1] Richardson noted in his briefing in the District Court that Falk was familiar with Richardson's heart condition because Falk had transported Richardson to medical appointments for his heart condition. (Reply to Resp., R. 62, Page ID # 489–90.) Indeed, Falk "was present for [Richardson's] entire treatment and was given explicit instructions [from] the doctor of how to treat and respond to [Richardson's] going into cardiac arrest on the return trip from the hospital back to the prison." (Reply to Resp., R. 62, Page ID # 490.) In

having "bad chest pain" and needed to go to healthcare. (Order, R. 66, Page ID # 552.) But Falk refused to call healthcare. (Order, R. 66, Page ID # 552.) Falk instead told Richardson to go back to his cell. (Order, R. 66, Page ID # 552.)

Richardson pleaded with Falk for a few moments, saying that he feared he would die if Falk did not get him to healthcare. (Order, R. 66, Page ID # 552, 559.) Falk replied, "Don't drop dead on my base. Go back to your cell." (R. & R., R. 63, Page ID # 525.) Falk did not call healthcare. (R. & R., R. 63, Page ID # 525.)

Instead of returning to his cell, Richardson sat in a nearby wheelchair. (Order, R. 66, Page ID # 552.) Fortunately, another correctional officer eventually called for help. (Richardson Dep., R. 54–4, Page ID # 432:9–10.) Around 8:52 PM—eight or so minutes after Falk

---

discovery, Richardson sought the log entries that would show who sent him to healthcare and transported him to the hospital. But Falk refused to produce that information, objecting that doing so was overly burdensome and "logbook entries from any date other than [the date of Richardson's heart attack] are not relevant." (Exhibit A: Def's Resp. to Pl.'s Disc., R. 44-1, Page ID # 245.) And the logbook he provided was almost entirely redacted. (Exhibit A: Def's Resp. to Pl.'s Disc., R. 44-1, Page ID # 250.) Lacking these necessary records, Richardson produced medical records of these visits as exhibits and explained that Falk was the accompanying officer. (Reply to Resp., R. 62, Page ID # 508, 512.)

7

refused to obtain medical care—someone transported Richardson to healthcare. (Order, R. 66, Page ID # 552.) When Richardson made it to healthcare, he suffered a severe heart attack and collapsed. (Order, R. 66, Page ID # 552.)

Surveillance footage, with no audio, captures the moments leading up to, during, and after Richardson's interaction with Falk. (Video Placeholder, R. 54–5, Page ID # 445.)

## B. Procedural background

As relevant to this appeal, Richardson—proceeding pro se—sued Falk for his deliberate indifference to Richardson's serious medical needs in violation of the Eighth Amendment. (Am. Compl., R. 13, Page ID # 48–49.) Falk eventually sought summary judgment on qualified-immunity grounds. (Def.'s Mot. Summ. J., R. 54, Page ID # 400–07.)

The District Court referred the motion to the Magistrate Judge, who recommended denying summary judgment on Richardson's Eighth Amendment medical-treatment theory. (R. & R., R. 63, Page ID # 519, 522–28) The Magistrate Judge concluded that genuine issues of fact remained as to whether Falk was deliberately indifferent, and delaying medical care for heart attacks violates clearly established law. (R. & R.,

8

R. 63, Page ID # 528.)

Falk timely objected to the Report and Recommendation. (Def.'s Obj. to R. & R., R. 64, Page ID # 536–44.) The District Court overruled Falk's objections and adopted the Report and Recommendation in full. (Order, R. 66, Page ID # 551.) Falk then filed a timely appeal. (Notice of Appeal, R. 68, Page ID # 567–68.)

## Summary of the Argument

This Court should affirm the denial of qualified immunity for two reasons.

*First*, many of Falk's arguments are outside this Court's jurisdiction in an appeal from the denial of qualified immunity. Though defendants normally may appeal from the denial of qualified immunity, strict jurisdictional limits govern these appeals. Defendants can make abstract legal arguments about whether given facts show a violation of clearly established law. But they cannot at this point challenge the district court's determination of the facts a reasonable jury could find. Defendants must instead take those facts as given for purposes of the appeal.

Falk overlooks this jurisdictional limit, largely premising his

9

arguments on his own version of the events. He disputes whether a layperson would recognize that Richardson was suffering from a heart attack. Falk also disputes whether he actually, subjectively knew of that heart attack. Both of these are factual issues. The District Court determined that a reasonable jury could find for Richardson on both. And ambiguous, silent surveillance footage does not blatantly contradict that determination. Falk's arguments on these points are thus outside this Court's appellate jurisdiction.

*Second*, on the merits, Richardson has produced enough evidence to show a violation of clearly established law. A jury could find that Richardson displayed obvious signs of a heart attack, that Falk subjectively knew that Richardson was suffering from a heart attack, and that Falk did nothing—only telling Richardson to return to his cell and not "drop dead on [Falk's] base." This complete denial of medical care to an inmate suffering from a heart attack is a clear Eighth Amendment violation. And even if Falk's conduct could be characterized as delaying (not denying) treatment, that unjustified—indeed, inexplicable—delay would similarly amount to deliberate disregard. So Falk had more than fair notice that he violated clearly established law

10

in refusing to call healthcare once he learned Richardson was exhibiting classic symptoms of a heart attack.

## Argument

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises a qualified-immunity defense at the summary-judgment stage, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). If the plaintiff meets his burden and "the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, the court must deny summary judgment." *Id.* (citing *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015)). To the extent this Court has appellate jurisdiction, it reviews the denial of qualified immunity *de novo*, applying the same standard as the District Court. *Brown*, 814 F.3d at 444.

11

The constitutional right at issue in this appeal is Richardson's Eighth Amendment right to adequate medical treatment. "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As discussed in depth below, to prevail on an Eighth Amendment medical-treatment theory, a plaintiff must satisfy both an objective and subjective component. *See id.* The objective prong requires showing "a serious need for medical care." *Id.* at 896. The subjective prong requires a showing that the defendant knew of this serious need yet disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). So to prevail on his deliberate-indifference theory against Falk, Richardson must show that (1) he had an objectively serious medical need, (2) Falk knew of that need, and (3) Falk disregarded that need.

## A. This Court lacks jurisdiction over Falk's arguments that dispute the factual basis for the District Court's immunity denial.

As a preliminary matter, some of Falk's arguments dispute the factual basis for the District Court's denial of qualified immunity. These

arguments are outside this Court's limited jurisdiction in this appeal.

### 1. This Court lacks jurisdiction over fact-based challenges to the denial of qualified immunity.

Under 28 U.S.C. § 1291, this Court has jurisdiction to hear "appeals from all final decisions of the district courts." "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). By delaying appeals until the end of district court proceedings, this final-decision rule avoids the harms of interlocutory appeals, which include interfering with trial courts' management of actions; adding cost and delay to litigation; and creating additional, unnecessary work for appellate courts. *Johnson*, 515 U.S. at 309.

"'[F]inal' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964). Under the collateral-order doctrine, "an order is immediately appealable if the order: (1) conclusively determined the disputed question; (2) resolved an important issue completely separate from the merits of the action; and (3) would be effectively unreviewable on appeal from a final judgment." *Williams v.*

13

*Maurer*, 9 F.4th 416, 426 (6th Cir. 2021) (quotation marks omitted). The Supreme Court has held that the denial of qualified immunity is generally a final decision under the collateral-order doctrine. *Mitchell*, 472 U.S. at 530; *see also Gillispie*, 18 F.4th at 915.

But the scope of those appeals is limited. The Supreme Court held in *Johnson v. Jones* that qualified-immunity denials are appealable only to the extent that the appeal involves abstract issues of law. 515 U.S. at 313; *see also Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). The genuineness of a fact dispute is not a sufficiently abstract issue of law. *Johnson*, 515 U.S. at 319–20; *see also id.* at 307, 317; *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). So fact-related issues—such as evidence sufficiency and the facts a reasonable jury could find—are normally not within the scope of qualified-immunity appeals. *Johnson*, 515 U.S. at 320; *see also Clark v. Louisville-Jefferson County Metro Gov't*, 130 F.4th 571, 579–80 (6th Cir. 2025) (per curiam).

There are several reasons for this limit on appellate jurisdiction. *First*, it furthers the purpose of qualified immunity while not undermining the final-judgment rule. Qualified immunity protects government officials from litigation when the law they allegedly

14

violated was not clear. *Harlow*, 457 U.S. at 818. Defendants can therefore appeal from a denial of qualified immunity to argue that particular conduct does not violate clearly established law. *See Johnson*, 515 U.S. at 313; *Mitchell*, 472 U.S. at 526. But when the parties dispute the facts a reasonable jury could find—not whether the plaintiff's version of those facts violates clearly established law—the justifications for deviating from the final-judgment rule fall away. *Johnson*, 515 U.S. at 313. In those circumstances, government officials are no different from other civil litigants—they must wait until after a final judgment to secure appellate review of evidence-sufficiency issues. *See Will v. Hallock*, 546 U.S. 345, 353–54 (2006) (explaining that "abbreviating litigation troublesome to Government employees" alone is an insufficient interest for appeals via the collateral-order doctrine).

*Second*, as a precedential matter, this limit comes from *Mitchell v. Forsyth* itself. *See Johnson*, 515 U.S. at 313. *Mitchell* "explicitly limited its holding to appeals challenging, not a district court's determination about what factual issues are 'genuine,' but the purely legal issue what law was 'clearly established.'" *Id.* (citation omitted); *see also Mitchell*, 472 U.S. at 528–30. And while the genuineness of a factual dispute is

15

(as the Supreme Court later acknowledged) technically a legal question, "it is a legal question that sits near the law-fact divide"—"a 'fact-related' legal inquiry." *Iqbal*, 556 U.S. at 674 (quoting *Johnson*, 515 U.S. at 314). So "the collateral orders that are 'final' under *Mitchell* turn on 'abstract,' rather than 'fact-based,' issues of law." *Id.* (quoting *Johnson*, 515 U.S. at 317).

*Third*, this limit on appellate jurisdiction respects the collateral-order doctrine. Again, one requirement for a collateral-order appeal is that the appealed issue be separate from the merits. The Supreme Court held in *Mitchell* that the clarity of the law was sufficiently separate. 472 U.S. at 527–28. But the sufficiency of the evidence is often a core merits question.[2] *Johnson*, 515 U.S. at 314. To review the sufficiency of the evidence in a qualified-immunity appeal would thus do far "more than relax the separability requirement—it would in many

---

[2] Although determining whether a constitutional violation occurred at all is also often a merits question, the Supreme Court explained in *Siegert v. Gilley* that this question is "[a] necessary concomitant" to determining clearly established law. 500 U.S. 226, 232 (1991). The sufficiency of the evidence is not. *See Johnson*, 515 U.S. at 319 ("When faced with an argument that the district court mistakenly identified clearly established law, the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason.").

cases simply abandon it." *Id.* at 315.

*Fourth*, this jurisdictional limit focuses appellate courts on abstract legal issues, reduces appellate workloads, and avoids multiple overlapping or duplicative appeals in a single action. *Id.* at 316–17. Immediate appeals from the denial of qualified immunity risk "ossify[ing] civil rights litigation." *Abel v. Miller*, 904 F.2d 394, 396 (7th Cir. 1990) (Easterbrook, J.). After all, a qualified-immunity appeal "can be employed for the sole purpose of delaying trial." *Yates v. City of Cleveland*, 941 F.2d 444, 448 (6th Cir. 1991). And "[d]efendants may defeat just claims by making suit unbearably expensive or indefinitely putting off the trial." *Abel*, 904 F.2d at 396.

So under *Johnson*, this Court has jurisdiction to review whether the conduct the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established rights. Defendants can thus appeal so long as they "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Adams*, 946 F.3d at 948. But unless the case is an "exceptional" one in which "the district court's factual determination . . . is 'blatantly contradicted by the record'"—such "'that no reasonable jury could believe it'"—this

17

Court lacks jurisdiction to review "'whether or not the pretrial record sets forth a genuine issue of fact for trial.'" *Id.* (first quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007), then quoting *Johnson*, 515 U.S. at 320); *see also Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008). This Court instead takes as given the District Court's determination of the facts a reasonable jury could find, including the inferences a jury could draw from the evidence. *Gillispie*, 18 F.4th at 916; *see also Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018).

When defendants' arguments dispute the factual basis for a district court's denial of qualified immunity, this Court "separate[s] [the] reviewable challenges from [the] unreviewable" ones. *DiLuzio*, 796 F.3d at 610. And this Court has consistently rejected defendants' attempts to circumvent the limits on this Court's jurisdiction by recasting factual arguments as abstract legal ones or premising purported legal arguments on their own version of the facts.

In *Anderson-Santos v. Kent County*, for example, this Court dismissed a qualified-immunity appeal in which the defendant only "purport[ed] to concede the plaintiff's view of the facts but in effect still litigat[ed] the factual dispute." 94 F.4th 550, 554 (6th Cir. 2024). In

18

denying qualified immunity, the district court had determined that genuine fact disputes existed as to the amount of force the defendant correctional officer had used against a pretrial detainee and the officer's state of mind in doing so. *Id.* at 554. On appeal, the defendant said he was conceding the plaintiff-favorable version of those facts. *Id.* at 555. But the defendant then premised his arguments on any force being "light" and "joking" and argued that no clearly established law prohibited such conduct. *Id.* at 554–55. "Because a concession [of the plaintiff's facts] in name only is no concession at all," this Court lacked appellate jurisdiction. *Id.* at 554.

Similarly, in *Gillman v. City of Troy*, this Court dismissed part of an appeal in which the defendant "repeatedly relied on her version of the facts to support her arguments." 126 F.4th 1152, 1159 (6th Cir. 2025) (quotation marks omitted). In denying qualified immunity, the district court determined that genuine disputes existed as to whether a pretrial detainee showed any signs of distress or was offered any medical attention. *Id.* But on appeal, the defendant premised her qualified-immunity arguments on her own version of those facts. *Id.* When pressed at oral argument, the defendant's counsel agreed "to concede

19

only the record-supported facts"—that is, those facts the defendant "believed had adequate support in the record." *Id.* at 1160. So even though the defendant purported to concede the plaintiff's facts for purposes of the appeal, that was "a concession in name only." *Id.* (quotation marks omitted). Other examples abound. *See, e.g., Groth v. Hill*, No. 25-1053, 2026 WL 674352, at *10 (6th Cir. Mar. 10, 2026) (unpublished); *Griffith v. Kattoula*, No. 25-1107, 2026 WL 311606, at *2 (6th Cir. Jan. 7, 2026) (unpublished); *Adams*, 946 F.3d at 951; *Barry*, 895 F.3d at 445.

### 2. Falk's arguments concerning the obviousness of Richardson's medical need and Falk's knowledge of that need are outside this Court's jurisdiction.

Again, to prevail on his medical-treatment theory, Richardson must show (among other things) that he had an obviously serious medical need and Falk knew of that need. Both of these are fact issues. "Whether the medical need is so obvious that a layperson would easily recognize it is a question of fact." *Colson v. City of Alcoa*, No. 20–6084, 2021 WL 3913040, at *5 (6th Cir. Sept. 1, 2021) (unpublished); *see also Grote v. Kenton County*, 85 F.4th 397, 408 (6th Cir. 2023) (holding that "disputes of material fact exist concerning the obviousness of [a

20

decedent's] medical need"); *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008) ("The determination that a medical need is objectively serious is a factual finding."). After all, a jury would need to determine what an individual said and the symptoms expressed. And a jury (made up of laypeople) would determine whether a layperson observing those symptoms would perceive an obvious, serious medical need. This Court accordingly lacks jurisdiction in a qualified-immunity appeal to review whether sufficient evidence exists to show that a medical need was obvious. *See, e.g.*, *Humes v. Jones*, 109 F.4th 1112, 1116–17 (8th Cir. 2024); *Colson*, 2021 WL 3913040, at *5.

The same is true of a defendant's knowledge of a serious medical need. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842; *see also Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). So this Court lacks jurisdiction in a qualified-immunity appeal to review whether sufficient evidence exists to show a defendant's knowledge. *See, e.g.*, *Humes*, 109 F.4th at 1116–17; *Cheeks v. Belmar*, 80 F.4th 872, 876 (8th Cir. 2023); *Kindl v. City of Berkley*,

21

798 F.3d 391, 398–99 (6th Cir. 2015).

Here, the District Court determined that a reasonable jury could find that Richardson had an obviously serious medical need. After all, "Richardson's complaints of bad chest pains" were sufficient to "demonstrate an obvious need for medical care," as chest pain "is one of the 'classic signs of an impending heart attack.'" (Order, R. 66, Page ID # 557 (quoting *Est. of Carter v. City of Detroit*, 408 F.3d 305, 311–12 (6th Cir. 2005)).) The District Court also determined that a reasonable jury could find that Falk knew of this need. Given that Richardson told Falk of his chest pain and his feelings of impending death—and Falk's telling Richardson not to drop dead—Richardson produced evidence from which "a reasonable jury could find that Falk knew of, and consciously disregarded, Richardson's serious medical needs." (Order, R. 66, Page ID # 559.) And although Falk denied having the requisite knowledge, "'a jury would be entitled to discount'" that testimony. (Order, R. 66, Page ID # 560 (quoting *Carter*, 408 F.3d at 313).)

On appeal, Falk nevertheless contends that Richardson did not have an obviously serious medical need. Appellant's Br. 29. He argues that the evidence—video of Richardson as well as Falk's own

22

testimony—"clearly show[s] that at the time of his contact with CO Falk, Richardson's affliction was not objectively sufficiently serious and was not obvious." Appellant's Br. 30. Falk also contends that he did not know of Richardson's serious medical need. Appellant's Br. 36. Falk again relies on his own testimony that he "did not believe Richardson was in distress." Appellant's Br. 30.

These arguments concern the sufficiency of the evidence—whether a reasonable jury could find that (1) Richardson's serious medical condition was obvious to a layperson and (2) Falk knew of that condition. These arguments are accordingly outside this Court's appellate jurisdiction.

### 3. *The video evidence does not blatantly contradict the facts the District Court determined a reasonable jury could find.*

In an apparent effort to get around these jurisdictional limits, Falk invokes the "blatant contradiction" exception to *Johnson*. Appellant's Br. 38–40. To be sure, this Court "must accept the plaintiff's version" of the facts as true in a qualified-immunity appeal unless video evidence "blatantly contradicts" or "utterly discredits" those facts. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022); *see also Scott*, 550 U.S. at

23

380. But this is a rare and narrow exception that applies only when unambiguous and conclusive video evidence renders a plaintiff's factual contentions a "visible fiction." *Scott*, 550 U.S. at 381; *accord Ramsey v. Rivard*, 110 F.4th 860, 868 (6th Cir. 2024); *Adams*, 946 F.3d at 948 (noting that the blatant-contradiction rule "is a narrow exception" to *Johnson*); *Landis v. Phalen*, 297 F. App'x 400, 404 (6th Cir. 2008) (explaining that the blatant-contradiction exception "applies only to the rare case at the outer limit where a district court makes a blatan[t] and demonstrabl[e] error" (quotation marks omitted)). If a video is ambiguous, this Court will not replace the district court's factual assumptions with this Court's own interpretation of the video. *See LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022); *see, e.g.*, *Bell*, 37 F.4th at 365–67; *Kindl*, 798 F.3d at 399.

Here, the surveillance video does not contradict the District Court's determination of the facts a reasonable jury could find, blatantly or otherwise. Falk contends that the video does not show Richardson "to be suffering any medical distress" or any "signs of physical pain or difficulty." Appellant's Br. 29, 39. Falk argues that this footage thereby conclusively establishes that Richardson did not have an obviously

24

serious medical need and that Falk did not know of any need. Appellant's Br. 30, 39.

But this is hardly the sort of video that would render Richardson's obvious medical need or Falk's knowledge of that need a visible fiction. For one thing, the video is shot from a distance, at a high angle, and through a fish-eye lens. It is thus not at all clear that the video could even capture the "signs of physical pain or difficulty" that Falk claims it clearly does not show. Appellant's Br. 39.

But even if the video could capture as much, the video would still not blatantly contradict Richardson's "actively experiencing a medical emergency." Appellant's Br. 39. The video lacks audio. And Richardson's words—that he was having a heart attack and fearing impending death—were enough to show an objectively serious medical need. Falk's reliance on the surveillance footage is therefore nothing more than an improper attempt to circumvent the jurisdictional bar that applies in qualified-immunity appeals.

* * *

In short, both the obviousness of Richardson's serious medical need—particularly whether a layperson would perceive it—and Falk's

25

knowledge of that need are fact questions. The District Court determined that these facts are genuinely disputed, such that a reasonable jury could find for Richardson on both. And the video evidence does not blatantly contradict that determination. So for purposes of this appeal, this Court must take as given that Richardson had an obviously serious medical need that Falk knew of. Falk's arguments to the contrary are outside this Court's appellate jurisdiction.

## B. The District Court correctly denied qualified immunity on Richardson's medical-treatment theory.

As mentioned above, to prevail on his deliberate-indifference theory against Falk, Richardson must show that (1) Richardson had an objectively serious medical need, (2) Falk knew of that need, and (3) Falk disregarded that need.

### 1. To the extent this Court can review the obviousness of Richardson's serious medical need, a jury could find that this need was obvious.

Plaintiffs can show an objectively serious medical need by showing "an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 899–900; *see also Hodges v. Abram*, 138 F.4th 980, 988 (6th Cir. 2025).

26

And courts have long held that the hallmark symptoms of a heart attack are "obvious." *Hodges*, 138 F.4th at 988 (quoting *Carter*, 408 F.3d at 312).

In *Carter*, for example, this Court recognized that the decedent's symptoms—chest pains, lack of effective medication, and difficulty breathing—were "classic signs of a serious illness[:] a heart attack."[3] 408 F.3d at 312. These were such obvious signs of a heart attack that "even laypersons can be expected to know that" immediate medical attention was required. *Carter*, 408 F.3d at 312. And they were enough to satisfy the objective prong of the plaintiff's medical-treatment theory. *Id.*

Other courts of appeals have reached the same conclusion. In *Sealock v. Colorado*, the Tenth Circuit recognized that chest pains— which the plaintiff believed were due to a heart attack—were a classic sign of an impending heart attack. 218 F.3d 1205, 1210 (10th Cir. 2000). The plaintiff's chest pains were thus sufficient to satisfy the objective

---

[3] Although *Carter* involved a pretrial detainee, this Court's pre-2021 cases applied the same deliberate-indifference standard to pretrial detainees and convicted prisoners. *See Hulon v. City of Lansing*, No. 23-1937, 2025 WL 817492, at *3–4 (6th Cir. Mar. 14, 2025) (unpublished); *see, e.g.*, *Hopper v. Plummer*, 887 F.3d 744, 756 (6th Cir. 2018).

prong. *Id.* Similarly, in *Mata v. Saiz*, the Tenth Circuit held that "severe chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate-indifference standard." 427 F.3d 745, 751 (10th Cir. 2005). And in *Plemmons v. Roberts*, the Eighth Circuit held that nausea, profuse sweating, and arm and chest pain—all indicative of a heart attack—satisfied the objective prong. 439 F.3d 818, 824 (8th Cir. 2006); *see also Russell v. Lumitap*, 31 F.4th 729, 741 (9th Cir. 2022) (analogizing to "classic heart attack symptoms" to hold that an aortic dissection was a serious medical need).

Here, Richardson displayed classic signs of a heart attack. He was suffering from chest pains, which his medicine did not relieve. (Order, R. 66, Page ID # 552.) He felt like he could drop dead at any moment. (Order, R. 66, Page ID # 559.) He told Falk of this. (Order, R. 66, Page ID # 552.) And Richardson made clear to Falk that he needed immediate medical care. (Order, R. 66, Page ID # 552.) Just like in *Carter*, *Sealock*, *Mata*, and *Plemmons*, Richardson displayed the classic signs of an impending heart attack. *See* Joseph P. Ornato & Mary M. Hand, *Warning Signs of a Heart Attack*, 104 Circulation 1210, 1212

28

(2001) (listing "chest discomfort" and "an impending feeling of doom" as two "warning signs" of a heart attack). That satisfies the objective prong.

As already discussed, most of Falk's arguments on this point largely concern the sufficiency of the evidence and are thus outside this Court's appellate jurisdiction. *See supra* at 20. And even if this Court could review the sufficiency of the evidence on this point, Richardson's just-discussed symptoms are enough to create a genuine dispute as to his serious medical need.

Falk's additional arguments merit only a brief response.

*First*, Falk points out that the symptoms Richardson exhibited were not identical to the symptoms in *Carter*. Appellant's Br. 31–32. True, but irrelevant. The plaintiff in *Carter* alleged only one symptom that Richardson did not: difficulty breathing. *See* 408 F.3d at 309. But in its place, Richardson alleged concerns of imminent death. (Order, R. 66, Page ID # 559.) Such concerns are a hallmark sign of an impending heart attack and must be taken just as seriously as difficulty breathing. Swapping one "classic sign" for another does not change the analysis. And even if Richardson's symptoms were not as severe as those in

29

*Carter*, they were still classic signs of a heart attack.

*Second* and similarly, Falk argues that the lack of any physical signs of medical distress (such as vomiting) preclude showing an obviously serious medical need. Appellant's Br. 32–33. Wrong. While physical signs of a heart attack can satisfy the objective prong, the absence of such signs does not preclude showing an objectively serious medical need. After all, people can only self-report several of the symptoms, such as chest pain, nausea, and feelings of impending doom. And any question about what Falk perceived and knew goes to deliberate indifference's subjective prong (discussed momentarily), not whether Richardson had an objectively serious medical need. *See Grote*, 85 F.4th at 407 (explaining the difference between—and the need to analyze separately—the objective and subjective components of a medical-treatment theory).

*Finally*, Falk argues that Richardson needed to submit medical evidence to satisfy the objective prong of a medical-treatment theory. Appellant's Br. 30–31, 34–35. Again, wrong. To be sure, this Court held in *Napier v. Madison County* that some plaintiffs pursuing deliberate-indifference/medical-treatment theories—specifically, those with non-

30

obvious medical needs—must produce verifying medical evidence. 238 F.3d 739, 742–43 (6th Cir. 2001). But "*Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention." *Blackmore*, 390 F.3d at 898. Given the obviousness of Richardson's heart attack, he did not need to provide any verifying medical evidence. And there is no dispute that he actually suffered a heart attack.

### 2. To the extent this Court can review Falk's knowledge of Richardson's serious medical need, a jury could find that Falk had that knowledge.

Again, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quotation marks omitted); *see also id.* (noting that "government officials do not readily admit the subjective component of this test").

Here, the District Court concluded that a reasonable jury could find that Falk had the requisite knowledge. (Order, R. 66, Page ID # 559.)

31

Richardson informed Falk of his heart attack symptoms, requested healthcare, and expressed the fear that he would "drop dead at any moment." (Order, R. 66, Page ID # 559.) From this—as well as the obviousness of Richardson's medical needs—a reasonable jury could find that Falk actually knew of Richardson's serious medical need.[4]

To be sure, Falk denies having such knowledge. Appellant's Br. 39. But a jury could disregard his testimony in light of the other evidence. After all, Richardson's telling Falk of his heart-attack symptoms is sufficient for Falk to know that Richardson was suffering a heart attack. A jury will ultimately conclude whether Falk actually drew that inference.

When it comes to knowledge, all of Falk's arguments are factual. That is, he argues only that a reasonable jury could not find that he had the requisite knowledge. As already explained, those arguments are outside this Court's appellate jurisdiction. *See supra* at 20. Nowhere

---

[4] As noted above, *see supra* note 1, Richardson sought prison records that would have shown Falk's sending Richardson to healthcare for heart problems and transporting Richardson to medical appointments for those problems. Those records could have provided additional evidence from which a jury could infer that Falk knew of Richardson's serious medical condition.

does Falk dispute that were he to have this knowledge, Richardson satisfied this portion of his medical-treatment theory.

### 3. Falk's complete denial of any medical care was disregard.

All that remains is disregard. When medical care is requested to treat an obvious, serious condition that the defendant is aware of, a complete denial of care amounts to disregard. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001). And that is precisely what happened here: Falk refused to help Richardson. (R. & R., R. 63, Page ID # 525.) That is, Falk did *nothing* to secure medical treatment for Richardson. He instead ordered Richardson back to his cell, telling Richardson not to "die on [his] base." (R. & R., R. 63, Page ID # 525.)

Falk's main argument on this point is that he merely delayed seeking any help for eight minutes. Appellant's Br. 33, 37. Not so. Delay requires a decision to take some action in the future. Here, Falk never sought medical treatment for Richardson. To be sure, Falk notes that he *said* he would call medical. *E.g.*, Appellant's Br. 6, 34. But nowhere— not in his affidavit, in his summary-judgment briefing, or in his appellate briefing—does Falk contend he ever actually called. And even if Falk contended otherwise, it would be "up to the factfinder whether to

33

infer that Falk was using his radio to contact healthcare." (R. & R., R. 63, Page ID # 527–28.)

Falk is thus mistaken in asserting that he merely delayed eight minutes in seeking treatment for Richardson. Falk instead did nothing. Richardson had the good fortune that someone else eventually took him to medical.

Further, even if Falk's conduct were characterized as a delay in seeking medical treatment (and not denial of it), his conduct still amounts to disregard. "Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation . . . is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm." *Blackmore*, 390 F.3d at 899. For good reason: a medical need falling into the "obvious" category requires "prompt medical attention," such that even brief delays can "detrimentally exacerbate the medical problem." *Id.* at 897. In cases concerning an "obvious" condition (like Richardson's heart attack symptoms), a prison official's "conduct in causing the delay creates the constitutional infirmity." *Id.* at 899.

34

So even if Falk delayed in obtaining medical treatment for eight minutes, that delay was impermissible. After all, "[e]ven a brief delay in treatment can be unconstitutional." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023). And courts have deemed similarly short delays unconstitutional. *See, e.g., Est. of Beauford v. Mesa County*, 35 F.4th 1248, 1269 (10th Cir. 2022) (holding that "the Constitution d[id] not permit a ten-minute delay in seeking medical help for an inmate who [a defendant] knows may not be breathing" (emphasis omitted)); *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (same, for an inmate suffering from a heart attack); *cf. Valderrama v. Rousseau*, 780 F.3d 1108, 1120 (11th Cir. 2015) (holding that waiting three-to-four minutes to call an ambulance for a gunshot victim was deliberate indifference). Given the obvious need for medical intervention in Richardson's case, *any* delay was unconstitutional.

Neither *Blackmore* nor *Carter* is to the contrary. To be sure, both cases involved longer delays in seeking treatment for a heart attack. *See Carter*, 408 F.3d at 307–08 (a few hours); *Blackmore*, 390 F.3d at 899 (two days). But neither case holds—or even suggests—that such lengthy delays are necessary for a defendant to disregard a serious medical

35

need. Instead, both cases make clear that any delay for non-medical reasons is unconstitutional when the medical care required is for a serious and obvious condition like a heart attack. *Carter*, 408 F.3d at 311–13; *Blackmore*, 390 F.3d at 895–96; *see Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (explaining that whether a delay is "tolerable . . . depends on the nature of the medical need and the reason for the delay").

Falk makes two additional arguments on disregard. Neither is persuasive.

*First*, Falk argues that this denial was justified by safety concerns. Appellant's Br. 33–34. Not so. The only concern Falk points to is "that multiple other prisoners were transiting the unit" when Richardson approached Falk. Appellant's Br. 34. But all Falk needed to do was contact healthcare, which Falk could have done through his radio. Falk did not need to leave his post or even look away. Given the seriousness of Richardson's condition, Falk's telling Richardson to return to his cell (and to not "drop dead on [Falk's] base," R. & R., R. 63, Page ID # 525) could not be justified by any safety concerns. *See also Blackmore*, 390 F.3d at 899 (noting that delaying medical treatment for "non-medical

36

reasons . . . creates the constitutional infirmity").

*Second*, Falk notes that he is not a medical professional. Appellant's Br. 36. True, but irrelevant. Richardson was not seeking medical treatment from Falk. Falk was instead the gatekeeper to any medical treatment. After all, inmates cannot obtain their own medical care—they must go through officials like Falk. *Estelle*, 429 U.S. at 104. And Falk's duty as a gatekeeper was simple: contact someone who has the necessary expertise to treat Richardson. *See Watkins*, 273 F.3d at 686. Falk's refusal to do so was inexcusable.

### 4.  *The illegality of Falk's conduct was clear.*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818). "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). So "the *sine qua non* of the 'clearly established' inquiry is 'fair warning.'" *Baynes v.*

37

*Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015) (quoting *Hope*, 536 U.S. at 741). And "'government officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Id.* at 611 (quoting *Hope*, 536 U.S. at 739, 741).

All reasonable prison guards know that they cannot completely deny medical care to someone they know is about to suffer or suffering from a heart attack. *Carter*, 408 F.3d at 307. In *Carter*, for example, this Court held that an officer's refusal to provide any medical treatment to a pretrial detainee suffering from a heart attack violated clearly established law. 408 F.3d at 310, 313. Similarly, in *Mata*, the Tenth Circuit held that an official's refusal to provide medical treatment to an inmate suffering from chest pains violated clearly established law. 427 F.3d at 748–49. And this Court has held that completely denying medical care in similar contexts violated clearly established law. *See Phillips v. Roane County*, 534 F.3d 531, 545 (6th Cir. 2008) (holding that denying medical care to a pretrial detainee suffering complications from diabetes violated clearly established law); *Kindl*, 798 F.3d at 395, 405 (holding that denying medical care to an arrestee suffering from alcohol poisoning violated clearly established law).

Even if Falk's conduct was a delay, not denial, of medical care, the illegality of his conduct was still clearly established. In this Circuit, "'[a] right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.'" *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (quoting *Gaspers v. Ohio Dept. of Youth Servs.*, 648 F.3d 400, 417 (6th Cir. 2011)). Decisions from courts other than the Supreme Court or Sixth Circuit must "'point unmistakably to the unconstitutionality of the conduct'" and be "'so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.'" *Perez v. Oakland County*, 466 F.3d 416, 427 (6th Cir. 2006) (quoting *Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998)); *see also Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020) (applying this Court's standard for demonstrating the law is clearly established). "And an action's unlawfulness can be clearly established from direct holdings, from specific examples describing certain conduct as prohibited, or from the general reasoning that the court employs." *Rhodes v. Michigan*, 10 F.4th 665, 680 (6th Cir. 2021) (citations omitted). So when a case from

39

another circuit is directly on point, it can clearly establish the law. *Wenk*, 783 F.3d at 598; *cf. Rhodes*, 10 F.4th at 680–83 (holding the law was clearly established based on out-of-circuit precedent in an Eighth Amendment prison-conditions case).

The Eighth Circuit's decision in *Tlamka* clearly establishes the unconstitutionality of delaying medical treatment in this case. *Tlamka* held that a roughly ten-minute delay of medical care to an inmate showing symptoms of a heart attack violated clearly established law. 244 F.3d at 634–35. When the decedent in *Tlamka* suffered a heart attack, the defendant prevented other inmates from providing the decedent CPR for about ten minutes. *Id.* at 631. The Eighth Circuit held that this roughly ten-minute delay in the face of someone showing symptoms of a heart attack clearly violates the Eighth Amendment. *Id.* at 634–35. The court accordingly denied qualified immunity. *Id.* at 635.

Just like the decedent in *Tlamka*, Richardson suffered from a heart attack. Just like the defendant in *Tlamka*, Falk saw the obvious signs of that heart attack and subjectively knew of the risk to Richardson. And just like the defendant in *Tlamka*, Falk prevented Richardson from receiving any medical treatment for several minutes. So just like in

40

*Tlamka*, Falk's actions were clearly unconstitutional.

*Goode v. Berlanga* is not to the contrary. 646 F. App'x 427 (6th Cir. 2016). In *Goode*, the decedent's cellmate informed the defendant that the decedent (who was suffering from a heroin overdose) was making loud noises in his sleep and foaming at the mouth. *Id.* at 429. Five-to-seven minutes later, the defendant checked on the decedent, confirmed those symptoms, and immediately sought medical help. *Id.* This Court held that the defendant had not violated clearly established law in waiting five-to-seven minutes to check on the decedent. *Id.* at 431. Although the cellmate had informed the defendant of the decedent's symptoms, the defendant did not personally observe them. *Id.* at 429. Indeed, he had seen the decedent sleeping without any apparent issues only fifteen minutes earlier. *Id.* Once the defendant saw the decedent's symptoms—and thus had personal knowledge of the decedent's serious medical need—the defendant immediately sought help. *Id.*

Falk's reliance on *Goode*, Appellant's Br. 42–43, is thus mistaken. The delay in *Goode* was between an officer being informed of potential symptoms and having personal knowledge of them. And once the defendant had that knowledge, he immediately sought help. Here, the

41

delay was between Falk having knowledge of Richardson's symptoms and seeking medical treatment.

Also, this Court favorably cited *Tlamka* in *Goode*. *Goode*, 464 F. App'x at 432–33. Specifically, this Court cited *Tlamka* to highlight the distinction between an officer having personal knowledge before the delay versus after the delay. *Id.* Thus, *Tlamka* is "so clearly foreshadowed by applicable direct authority as to leave no doubt regarding [its] holding." *Ashford*, 951 F.3d at 804; *see also Goode*, 464 F. App'x at 433.

### Conclusion

Taking the District Court's facts as true (as this Court must do in an appeal from the denial of qualified immunity), Falk's decision to send Richardson back to his cell after Richardson complained of chest pain and imminent death—instead of immediately calling for a transport to health care—was an act of deliberate indifference. Richardson's medical need was objectively serious. Falk knew that. Falk nevertheless refused to seek any treatment for Richardson. And the illegality of Falk's conduct was clear. This Court should accordingly affirm the denial of qualified immunity.

42

Respectfully submitted,

/s/ Bryan Lammon

WILLIAM & MARY LAW SCHOOL
Appellate & Supreme Court
Clinic
PO Box 8795
Williamsburg, VA 23187
Student Counsel:
   Hayden Miller
   Elle Rickman
   Trey Rogers

Bryan Lammon
FINAL DECISIONS PLLC
8401 Maryland Drive Suite 8197
Richmond, VA 23294
757-204-5896
bryan@finaldecisions.org

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20033

March 18, 2026

*Attorneys for Plaintiff-Appellee.*

43

## Certificate of Compliance

This brief complies with the word limit in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 8,495 words, excluding the parts of the brief exempted by Rule 32(f), as counted by the word-processing software used to prepare the brief.

This brief also complies with the typeface requirements of Rule 32(a)(5) and the style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface—14-point Century Schoolbook—using Microsoft Word for Mac version 16.107.

Finally, this brief has been scanned for viruses and is virus free.

/s/ Bryan Lammon

March 18, 2026                                Bryan Lammon

44

## Sixth Circuit Rule 30(g)(1) Designation of
## Relevant District Court Documents

In accordance with Sixth Circuit Rules 28(a) and 30(g)(1), Plaintiff-

Appellee Larry Richardson designates the following portions of the

record:

| Description | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | Feb. 28, 2023 | R. 1 | 1–5 |
| Amended Complaint | Feb. 28, 2023 | R. 3 | 14–16 |
| Order of Partial Summary Dismissal | May 15, 2023 | R. 7 | 4–16 |
| Plaintiff's Motion to Amend | June 6, 2023 | R. 9 | 19–36 |
| Order Denying Motion to Amend | June 15, 2023 | R. 11 | 38–41 |
| Plaintiff's Motion to Amend | July 11, 2023 | R. 13 | 44–52 |
| Exhibit A: Defendant's Response to Plaintiff's Discovery | Oct.30, 2024 | R. 44-1 | 245–258 |
| Defendant's Motion for Summary Judgment | Jan. 28, 2025 | R. 54 | 389–445 |
| Plaintiff's Response | Feb. 7, 2025 | R. 58 | 459–464 |
| Report & Recommendation | June 25, 2025 | R. 63 | 519–532 |
| Defendant's Objections to Report & Recommendation | July 9, 2025 | R. 64 | 533–545 |
| Plaintiff's Response | July 21, 2025 | R. 65 | 546–550 |
| Opinion & Order | Sep. 3, 2025 | R. 66 | 551–564 |
| Notice of Appeal | Sep. 26, 2025 | R. 68 | 567–68 |

45

## Certificate of Service

I certify that on March 18, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. All parties or their counsel are registered as ECF filers and will accordingly be served via the CM/ECF system.


March 18, 2026

/s/ Bryan Lammon
Bryan Lammon