No. 25-1867

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LARRY RICHARDSON,

     Plaintiff - Appellee,

v.

NATHAN FALK,

     Defendant - Appellant.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Susan K. DeClercq

**DEFENDANT-APPELLANT'S REPLY BRIEF**

> Lars H. Kivari (P84582)
> Assistant Attorney General
> Counsel of Record
> Attorney for Defendant-Appellant
> Corrections Division
> P.O. Box 30217
> Lansing, MI  48909
> (517) 335-3055

Dated:  April 8, 2026

## TABLE OF CONTENTS

Page

Table of Authorities.............................................................................ii

Introduction ........................................................................................1

Argument.............................................................................................2

I.    This Court has jurisdiction over CO Falk's appeal. ........................2

II.   Richardson's cited case law fails to establish CO Falk
      violated clearly established law. ....................................................4

      A.    *Estate of Carter*, *Mata*, *Phillips*, and *Kindl* are
            distinguishable from the present case...................................5

      B.    *Tlamka* alone does not clearly establish the
            unconstitutionality of CO Falk's conduct in this
            Circuit...............................................................................11

Conclusion and Relief Requested.........................................................13

Certificate of Compliance...................................................................15

Certificate of Service ........................................................................16

i

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Ashford v. Raby,*
  951 F.3d 798 (6th Cir. 2020) ...............................................................12

*Bell v. City of S.field,*
  37 F.4th 362 (6th Cir. 2022)................................................................4

*Estate of Carter v. City of Detroit,*
  408 F.3d 305 (6th Cir. 2005) ........................................................i, 5, 8

*Johnson v. Jones,*
  515 U.S. 304 (1995) ............................................................................2

*Kindl v. City of Berkley,*
  798 F.3d 391 (6th Cir. 2015) ................................................. 6, 8, 10, 11

*Mata v. Saiz,*
  427 F.3d 745 (10th Cir. 2005) .........................................................5, 11

*Phillips v. Roane Cty.,*
  534 F.3d 531 (6th Cir. 2008) ...........................................................6, 11

*Scott v. Harris,*
  550 U.S. 372 (2007) ........................................................................3, 4

*Tlamka v. Serrell,*
  244 F.3d 628 (8th Cir. 2001) .......................................................i, 11, 13

**Statutes**

42 U.S.C. § 1983 ................................................................................10

## INTRODUCTION

In an attempt to stave off this case from this Court's review, Richardson argues this Court lacks jurisdiction to review CO Falk's appeal to the extent CO Falk disputes the district court's factual findings. He then argues the illegality of CO Falk's conduct was clearly established in January 2023 such that reasonable corrections officers, like CO Falk, would understand an eight-minute delay in medical care violated the Eighth Amendment.

But Richardson does not dispute the fact that the district court completely overlooked the video evidence CO Falk submitted in support of his motion for summary judgment when it made its factual determination and denied CO Falk qualified immunity. Had it considered, or even reviewed the video evidence, the district court would have observed that it blatantly contradicts Richardson's claims that he was experiencing a serious medical need when he spoke with CO Falk. And as to his claim that the status of the law in January 2023 was clearly established, Richardson appears to be asking this Court to ignore its own precedent against relying on out-of-circuit cases.

1

CO Falk is entitled to qualified immunity.  In January 2023, it was not clearly established *in this Circuit* that an eight-minute delay in healthcare violated the Eighth Amendment.  This Court should reverse and remand, ordering the district court to dismiss with prejudice all claims against CO Falk.

## ARGUMENT

### I.    This Court has jurisdiction over CO Falk's appeal.

Richardson argues that this Court lacks jurisdiction over CO Falk's appeal to the extent CO Falk raises factual disputes concerning the sufficiency of the evidence.  (Appellee Br., Doc. 16, pg. 21–35.)  More specifically, he argues the "blatant contradiction" exception to *Johnson* as set forth in *Scott* is inapplicable because the video evidence is ambiguous and does not "utterly discredit" Richardson's version of events.  (*Id.* at pg. 32–35.)

To be clear, CO Falk recognizes that factual disputes are typically beyond the scope of this Court's jurisdiction for a qualified immunity appeal.  *Johnson v. Jones*, 515 U.S. 304 (1995).  As such, CO Falk is not challenging the district court's factual determination or interpretation of the video evidence.  Indeed, the issue here is not the district court's

2

interpretation of the video evidence, but instead the district court's failure to consider the video evidence all together when it ruled on CO Falk's motion for summary judgment.

*Scott v. Harris* unequivocally made clear the importance of considering video evidence when ruling on a motion for summary judgment, particularly when adopting a version of events.  550 U.S. 372 (2007).  CO Falk submitted video evidence in support of his motion for summary judgment, as discussed in his brief.  (Appellant Br., Doc. 11, pg. 47–49.)  The video evidence shows Richardson casually walking around the unit and briefly interacting with CO Falk while exhibiting no outward signs of medical distress or emergency.  (*Id.*)  Under *Scott,* the district court was obligated to review this video evidence for purposes of adopting a version of facts and ruling on CO Falk's motion for summary judgment.

But it did not.  There is no record that the district court ever reviewed or even considered the video evidence when it adopted Richardson's version of events and denied CO Falk qualified immunity. (Order, R. 66, Page ID # 551–564.)  And Richardson notably does not dispute that the district court failed to consider the video evidence.

3

(Appellee Br., Doc. 16, pg. 1–55.)  Had the district court considered or reviewed the video evidence when ruling on CO Falk's motion for summary judgment, it would have observed that Richardson displayed no objectively serious medical need during his brief interaction with CO Falk.  Given that the video evidence does not show Richardson displaying an objectively serious medical need, his allegations that he was experiencing a serious medical need at the time of his interaction with CO Falk are blatantly contradicted.  Thus, this Court can rely on the video evidence "over the complaint to the degree [the video is] clear and 'blatantly contradict[s]' or 'utterly discredit[s]' " Richardson's versions of events.  *Bell v. City of S.field*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott*, 550 U.S. at 380).

## II.    Richardson's cited case law fails to establish CO Falk violated clearly established law.

Richardson argues CO Falk was "on notice" of the illegality of his alleged conduct based on several decisions from this Circuit and other circuits, which he believes precludes CO Falk from being entitled to qualified immunity.  (Appellee Br., Doc. 16, pg. 46–51.)  But Richardson's cited case law is unpersuasive and fails to establish the

4

status of the law in 2023 was "clearly established" such that a reasonable corrections officer, such as CO Falk, would understand his conduct was unlawful.

**A.** ***Estate of Carter, Mata, Phillips,* and *Kindl* are distinguishable from the present case.**

He first points to *Estate of Carter*. (*Id.* at pg. 47.) CO Falk has already addressed the significant factual dissimilarities between *Estate of Carter* and the present case in his brief. (Appellant Br., Doc. 11, pg. 39–41.) In tandem with *Estate of Carter*, Richardson argues *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), a Tenth Circuit case, "held that an official's refusal to provide medical treatment to an inmate suffering from chest pains violated clearly established law." (Appellee Br., Doc. 16, pg. 47.) While that is true, Richardson ignores the factual circumstances in *Mata* that led to the Tenth Circuit's holding. Indeed, in *Mata*, the inmate's complaints of chest pains had spanned *over two days* and she had had multiple interactions with healthcare personnel during that several-day period. *Mata*, 427 F.3d at 750. That is a far cry from the present case. The only time Richardson complained to CO Falk about his alleged chest pain in this case was during their single,

brief interaction on January 27, 2023. (Order, R. 66, Page ID # 552.) And Richardson was ultimately taken to healthcare just minutes later. (*Id.*)

In an apparent effort to draw a connection between the Tenth Circuit's holding in *Mata* and this Circuit's precedent, Richardson argues that this Circuit has found violations of clearly established law in cases similar to the circumstances that were present in *Mata*. (Appellee Br., Doc. 16, pg. 47.) Specifically, he cites *Phillips v. Roane Cty.*, 534 F.3d 531 (6th Cir. 2008) and *Kindl v. City of Berkley*, 798 F.3d 391 (6th Cir. 2015). But Richardson appears to consider the holdings in *Phillips* and *Kindl* in a vacuum — he fails to consider the specific, relevant facts that were present in those cases that led to this Court finding violations of clearly established law.

In *Phillips*, for example, officers found a detainee in her cell unconscious, not breathing, and without a detectable pulse. *Phillips*, 534 F.3d at 536. She regained consciousness shortly after being found and was observed to be "swollen" with discolored skin. *Id.* Despite her condition, jail staff decided to keep the detainee at the jail, rather than transferring her to an outside medical facility. *Id.*

6

Over the course of the next *two weeks*, the detainee's condition worsened. *Id.* Her symptoms included labored breathing, vomiting blood, passing out, nausea, constipation, fatigue, chest pains, numbness, and an inability to stand for extended periods of time without getting dizzy. *Id.* She submitted a request for medical care, and two days later she was seen by a doctor at the jail for an examination. *Id.* However, the exam only lasted six minutes, and she was only prescribed Ibuprofen. *Id.* Days later she submitted another request for healthcare again complaining about nausea, constipation, and a "possible kidney infection." *Id.* She was prescribed an antibiotic and a urinalysis was ordered, but the detainee was not actually examined by a doctor or healthcare professional following the second request for medical care. *Id.*

During the same two-week period, the detainee was placed in a holding cell for medical observation based on her continued complaints of nausea, vomiting, constipation, and chest pains. *Id.* at 537. Jail staff shut the water off to her cell to prevent the detainee from flushing the toilet to "verify" she was experiencing the medical symptoms she was reporting. *Id.* Despite her symptoms and complaints, the officers did

not deem the detainee's condition serious enough to require a medical assessment. *Id.* A day or so after being placed in the holding cell, jail staff found the detainee lying on her cell floor with blood coming from her mouth. *Id.* She appeared dizzy, lethargic, and nauseated. *Id.* Jail staff contacted the detainee's medical provider who instructed them to reduce the dosage of the detainee's medication. *Id.* The detainee was found unconscious in her cell later that day and pronounced dead shortly thereafter. *Id.*

Citing *Estate of Carter*, the *Phillips* panel held that pretrial detainees' right to adequate medical care was clearly established under the Fourteenth Amendment (as opposed to the Eighth Amendment, as applies in the present case), and that "where the *circumstances are clearly sufficient* to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Id.* at 545. (emphasis added) (internal quotations omitted).

Turning to *Kindl,* a detainee was arrested and booked into jail at approximately 9:55 a.m. after testing positive for alcohol in violation of her probation conditions. *Kindl,* 798 F.3d at 395. At booking, she

8

informed the jail staff that she "might have a little alcohol withdrawal." *Id.* She was placed in a cell which was equipped with video monitoring and in direct view of the front desk for observation where officers were stationed. *Id.* Video established that throughout the morning and into the afternoon, the detainee was observed lying on the in-cell bench and moving around the cell. *Id.* at 396.

But at approximately 7:46 PM, almost ten hours later, the detainee's condition worsened. *Id.* The video showed the detainee experiencing seizure-like jerking, and she appeared to urinate herself. *Id.* Shortly after 8:00 p.m., the detainee got the attention of the officers and informed them that "she may go into DTs [i.e., delirium tremens] at some point" and requested that the officers "keep an eye on her." *Id.* (alteration in original.) The officers assured the detainee that they would. *Id.*

Over the course of the next several hours, the detainee suffered multiple, intermittent, yet brief, convulsions and seizures, but she was still able to move around the cell and position herself on the bench. *Id.* at 396–397. At approximately 11:53 p.m., however, the detainee experienced a "violent" seizure and did not move after that point. *Id.* at

9

397. Her body was found approximately six hours later by the officers. *Id.* Her estate subsequently sued the officers under the Fourteenth Amendment and 42 U.S.C. § 1983. *Id.* at 395–397. The officers moved for summary judgment on the basis of qualified immunity, but the district court denied their motion. *Id.* at 395. The officers appealed. *Id.* On appeal, the *Kindl* panel determined that it lacked jurisdiction to consider the defendant's claim for qualified immunity because the officers' arguments principally amounted to factual disputes, as opposed to a pure question of law. *Id.* at 398.

Richardson overlooks all of these significant factual distinctions. In *Phillips*, the delay in medical care was approximately two weeks, and the medical symptoms reported were far more extensive than Richardson's limited symptoms. And in *Kindl*, the delay was over twelve hours. In this case, the evidence only shows Richardson and CO Falk having a single, brief conversation during which Richardson claims he reported having chest pains and that he could die at any minute, then Richardson being taken to healthcare just minutes later.

What's more, Richardson asserts that this Circuit held in *Kindl* "that denying medical care to an arrestee suffering from alcohol

10

poisoning violated clearly established law." (Appellee Br., Doc. 16, pg. 47.) But Richardson is wrong — *Kindl* had no such holding. As noted above, the *Kindl* panel expressly held that it lacked jurisdiction to consider the defendants' claim of qualified immunity on appeal. *Kindl*, 798 F.3d at 398. Given that the *Kindl* panel determined that it lacked jurisdiction to consider the issue of qualified immunity, this Circuit could not have held that denying medical care to an arrestee suffering from alcohol poisoning violated clearly established law, as Richardson claims it does. Thus, Richardson's reliance on *Kindl* is misplaced.

While *Phillips* and *Kindl* may be comparable to *Mata*, none of these cases are comparable to the present case. *Phillips*, *Kindl*, and *Mata* did not clearly establish that an eight-minute delay in medical care would violate a prisoner's Eighth Amendment rights, such that a reasonable corrections officer would understand CO Falk's conduct was unlawful.

**B.    *Tlamka* alone does not clearly establish the unconstitutionality of CO Falk's conduct in this Circuit.**

Richardson argues *Tlamka*, an Eighth Circuit case, by itself clearly establishes the unconstitutionality of the eight-minute delay in

11

medical care caused by CO Falk.  (Appellee Br., Doc. 16, pg. 48–50.)  He argues *Tlamka* alone was enough to put reasonable corrections officers, such as CO Falk, on notice of the unconstitutionality of a less than ten-minute delay in medical care.  *Id.*  Among other cases, he cites *Ashford v. Raby*, 951 F.3d 798 (6th Cir. 2020), for the proposition that an out-of-circuit decision can clearly establish law in this Circuit, provided that the out-of-circuit decision " 'point[s] unmistakably to the unconstitutionality of the conduct' and be 'so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.' "  (*Id.* at pg. 48.)

But in so arguing, Richardson appears to overlook the fact that the *Ashford* panel essentially adopted this Circuit's "rule against out-of-circuit authority."  *Ashford*, 951 F.3d at 804.  In *Ashford*, the plaintiff-appellant cited on appeal two out-of-circuit cases (one from the Ninth Circuit and one from the Eleventh Circuit) to argue the status of the law in this Circuit was clearly established pertaining to use of force.  *Id.*  Noting that the plaintiff-appellant cited "only two out-of-circuit cases," the *Ashford* panel explained,

12

> This general rule against out-of-circuit authority makes perfect sense.  Why?  Because at its heart, the "clearly established" requirement comes down to fair notice.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982).  Reasonable officers in this circuit will pay attention to this court's caselaw.  After all, that's the law that governs their actions.  But we can't expect officers to keep track of persuasive authority from every one of our sister circuits.  *See Kent v. Oakland Cty.*, 810 F.3d 384, 397 (6th Cir. 2016).  They spend their time trying to protect the public, not reading casebooks.

*Id.  Tlamka* is only one out-of-circuit case.  And its distinctions with the present case are plenty, as discussed in CO Falk's brief.  (Appellant Br., Doc. 11, pg. 52–55).  Neither CO Falk nor any other reasonable corrections officer would be on fair notice that *Tlamka* clearly established any law here in the Sixth Circuit.  Thus, Richardson's reliance on *Tlamka* is also misplaced.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above and in his brief on appeal, CO Falk respectfully requests that this Court allow this appeal to proceed because the video evidence blatantly contradicts Richardson's allegations, and it is based on qualified immunity.  CO Falk further requests that this Court reverse the district court's denial of qualified

13

immunity because he did not violate Richardson's Eighth Amendment rights and there was no clearly established law holding that an eight-minute delay in medical care violated the Eighth Amendment.

Respectfully submitted,

*/s/ Lars H. Kivari*
Assistant Attorney General
Counsel of Record
Attorney for
Defendant-Appellant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
KivariL@michigan.gov

Dated:  April 8, 2026

14

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this reply brief contains no more than 6,500 words. This document contains 2,577 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

*/s/ Lars H. Kivari*
Assistant Attorney General
Counsel of Record
Attorney for
Defendant-Appellant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
KivariL@michigan.gov

15

# CERTIFICATE OF SERVICE

I certify that on April 8, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*/s/ Lars H. Kivari*
Assistant Attorney General
Counsel of Record
Attorney for
Defendant-Appellant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
KivariL@michigan.gov

16